# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### JUNE SESSION, 1999

FILED

August 9, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 03C01-9711-CC-00501** |
| **Appellee** | ) | |
| | ) | **GRAINGER COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. Ben W. Hooper II, Judge** |
| **PAUL J. SWANSON,** | ) | |
| | ) | **(Sentencing)** |
| **Appellant** | ) | |

For the Appellant:

**Lu Ann Ballew**
Asst. Public Defender
P. O. Box 416
Dandridge, TN  37725

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Clinton J. Morgan**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Alfred C. Schmutzer, Jr.**
District Attorney General

**Michael Gallegos**
Asst. District Attorney General
Sevier County Courthouse
Sevierville, TN

OPINION FILED: _____

AFFIRMED WITH MODIFICATION OF JAIL CREDIT

**David G. Hayes**
Judge

**OPINION**

The appellant, Paul J. Swanson, appeals the sentencing decision of the Grainger County Criminal Court following his guilty pleas to three counts of attempted aggravated sexual battery, class C felonies. Pursuant to the terms of the negotiated plea agreement, the appellant agreed to an effective six year sentence. The agreement further provided that the manner of service of the sentences was to be submitted to the trial court for determination. The trial court ordered total confinement. The appellant appeals this decision contending that the trial court erred in failing to grant alternative sentences and in failing to credit the appellant with time spent in a residential sexual offender treatment center prior to entry of his guilty pleas.

After review of the record, we affirm the judgment of the trial court; however, finding the appellant entitled to additional pretrial credit, the judgment of conviction is modified to reflect an additional sentence credit of forty-nine days.

**Background**

On May 28, 1996, and April 28, 1997, juvenile petitions were filed against the appellant alleging that he had committed the offenses of sexual battery. The alleged minor victims were members of his family.[1] The allegations charged that the appellant had sexual contact with the three minor children, including touching of the vaginal area of the minor female and touching of the penile area of the two minor male victims. On August 25, 1996, the appellant voluntarily entered Hermitage Hall,

---

[1]The appellant was seventeen years of age in 1996. The victims were ages five, nine, and nine respectively at the time the petitions were filed.

a residential sex offender treatment program for juveniles located in Nashville.

On June 27, 1997, the juvenile court judge ordered that a psychological examination of the appellant be completed by Cherokee Health Systems to determine the appellant's competency and mental condition at the time of the alleged offenses. The examination was conducted on July 17, 1997. Dr. Jeffery Munson, a clinical psychologist employed with Cherokee Health Systems, determined that the appellant was competent to stand trial and that a defense of insanity could not be supported. Specifically, Dr. Munson concluded that, although the appellant "was suffering from a mental illness, . . . his mental status was not such as [to] justifiably prevent his knowing the wrongfulness of his acts."[2] Based in part on the results of this examination, the juvenile court granted the State's motion to transfer the case to the Criminal Court. On August 14, 1997, one day prior to the appellant's nineteenth birthday, he was transferred from the custody of Hermitage Hall to that of the Grainger County Sheriff.[3] Subsequently, three criminal informations were filed in the Grainger County Criminal Court on September 16, 1997, charging the appellant with the attempted aggravated sexual battery of three minor children. On this same date, the appellant entered guilty pleas to these charges and a hearing was held to determine the manner of service of the negotiated effective six year sentence.

The proof at the sentencing hearing revealed that the nineteen year old appellant was a slow learner who had spent his entire educational career in special education programs. Notwithstanding this placement, psychological testing of the appellant revealed that his IQ was 83, below average but not mentally retarded. Documentation generated during his one year stay in the Hermitage Hall sexual

---

[2]Dr. Munson explained at the subsequent sentencing hearing that the mental illness suffered by the appellant was that the appellant could be diagnosed with pedophilia.

[3]The juvenile court set bond at $3000 and provided that, as a condition of bond, the appellant must be immediately transported to The Pines Residential Treatment Center in Portsmouth, Virginia, for admission into an adult residential sex offender treatment program.

offender treatment program indicates that the appellant "has a history of sexually offensive behavior since . . . the age of thirteen." Indeed, while in treatment, the appellant admitted to having inappropriate sexual contact with thirteen known victims, all minors, both male and female. One of the known victims was also a resident at Hermitage Hall. Ashley MacLachlan, a clinical therapist at Hermitage Hall, opined that the appellant "continues to need a 24-hour, supervised, structured setting in which his behaviors can be monitored. He is at significant risk to sexually reoffend, and, if placed into the community, it is likely that he will reoffend and target young children." Her treatment of the appellant also revealed his tendency to justify his behavior by his misfortune and mistreatment by other individuals, including his own sexual abuse, and his belief that he will not get caught. This assessment also places the appellant at a significant risk for reoffense. Finally, Ms. MacLachlan concluded that the appellant was not responding to the normal approaches toward the treatment of adolescent offenders and was in need of a more intensive adult-oriented treatment program.[4]

The appellant expressed his awareness of the serious nature of his offenses and his desire to return with his mother to her home in Michigan and seek outpatient counseling. He explained that the incidents were caused by flashbacks of his own sexual abuse. The appellant denied that he reported his abuse of other minor victims during his counseling sessions at Hermitage Hall. He also refutes other specific findings and observations made by Ms. MacLachlan during his treatment period. The appellant described the abuse inflicted upon him by other inmates while being housed in both the Grainger and Hamblen County jails.[5] This continuous

---

[4]There are currently no residential sex offender treatment programs for young men over the age of nineteen in the state of Tennessee. The appellant applied to The Pines Treatment Center in Portsmouth, Virginia. The cost of one year's treatment at this center is approximately $118,625. The lack of the appellant's finances prohibit consideration of this treatment option.

[5]The appellant related that he had endured incidents of abuse including being beaten up by fellow inmates, being pummeled with cans of hot water, bars of soap, and wet paper rolls, being forced to perform oral sex, and being forced to relinquish his $10/week allowance provided by his family.

abuse has made him even more fearful of incarceration in the Department of Correction.

After considering this evidence along with testimony from the appellant's mother and father, the trial court concluded:

> . . .this is a matter . . . where I am of the opinion that I have no choice but to order you to serve the six year sentence. Looking at your record that's been accumulated thus far, you have a serious problem, and I'm certain that you are sorry for what you've done; I don't question that. But the problem has to be addressed; it's got to be dealt with. There's no one in the private sector to deal with it, probably because of the financial burden that is associated with private treatment. I'm not sure that the State of Tennessee is capable of dealing with it . . . but it is the only thing that's left.
>
> The worst thing that I could do for you, and possibly unknown others, would be to place you on probation. I don't think that you could control whatever impulses – you know, that you have, and it's for that reason that I do sentence you to serve six years in the Tennessee Department of Correction.

Additionally, finding no legal authority to do so, the court also denied the appellant's request that he be given three hundred and fifty-five days pretrial credit for time spent at Hermitage Hall.

**Analysis**

When a defendant challenges the manner of service of his sentence, this court must conduct a *de novo* review with the presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d)(1997). This presumption is applied if the record shows that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Moreover, the appellant maintains the burden of showing that the sentence imposed by the trial court is improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

Again, the appellant asserts that the trial court erred in ordering that the appellant serve his sentences in the Department of Correction. Specifically, the appellant contends that he should have been granted total probation. In support of his argument, the appellant avers that a sentence of total confinement is not appropriate because (1) he has no prior criminal history, (2) no evidence was presented to show confinement was necessary to avoid depreciating the seriousness of the offense, and (3) he had never previously been provided adult sex offender treatment. See Tenn. Code Ann. § 40-35-103(1)(1997).

Upon our *de novo* review, we conclude that, although the appellant is a range I standard offender of class C felonies, he has a criminal history evincing a "clear disregard for the laws and morals of society" and "failure of past efforts at rehabilitation." Tenn. Code Ann. § 40-35-102(5)(1997). The record is replete with the appellant's admissions of his history of sexual abuse toward minor children and with observations by others that the appellant has not cooperated with his treatment program and has in fact relapsed as evidenced by his acts of deviant behavior committed while in the program. Accordingly, he is not presumed to be a favorable candidate for alternative sentencing and bears the burden of showing his entitlement to an alternative sentence. See Tenn. Code Ann. § 40-35-102(5) & (6); Tenn. Code Ann. § 40-35-401(d).

The appellant has failed to carry his burden of establishing his entitlement to any alternative sentence, including probation. Again, the record shows that the appellant has engaged in deviant behavior for the past six years. Despite his assertions to the contrary, the testimony of Ashley MacLachlan demonstrated that he is unwilling to accept responsibility for his actions and has shown unwillingness to participate in a treatment program. The majority of the incidents of abuse were committed against younger family members, including his own brothers and sisters, thus, abusing a position of private trust. See State v. Zeolia, 928 S.W.2d 457, 461

6

(Tenn. Crim. App. 1996). He committed similar acts of abuse while in the care of a treatment facility. Moreover, the appellant was diagnosed as being very likely to reoffend. See Tenn. Code Ann. § 40-35-103(1)(A)-(C). The trial court, recognizing these factors in addition to the appellant's urgent need for sexual offender treatment, determined that, based upon the unavailability of private funding for inpatient supervised treatment, the only viable sentencing option in the best interest of both the appellant and society in general was that of total confinement. See generally Tenn. Code Ann. § 39-13-701 et seq. (1997) (Tennessee Standardized Treatment Program for Sex Offenders Act); Tenn. Code Ann. § 40-35-503(c) (1997) (parole eligibility for convicted sex offenders). We, also, can reach no other conclusion. A sentence of total confinement is appropriate. This issue is without merit.

The appellant also asserts that he is entitled to pretrial sentence credit for time spent in the youth sexual offender treatment program at Hermitage Hall.[6] In denying the appellant's request, the trial court noted that the appellant voluntarily committed himself to such treatment and was under no obligation by the court to do so. As such, the court found no authority under which the court could grant credit for the time at Hermitage Hall.

> Credit for pretrial detention is permitted
>
> to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

---

[6]The appellant remained in the care of Hermitage Hall from August 25, 1996, until August 14, 1997, when the juvenile court transferred him to the custody of the Grainger County Sheriff's Department. The trial court correctly credited the appellant's sentences with time served in the county jail prior to his conviction.

See Tenn. Code Ann. § 40-23-101(c) (1997). The awarding of these credits is mandatory. State v. Henry, 946 S.W.2d 833, 834 (Tenn. Crim. App. 1997) (citing Stubbs v. State, 216 Tenn. 567, 393 S.W.2d 150 (1965)). Our supreme court has interpreted the statute to mean that a prisoner is entitled to pretrial credit whenever involuntarily committed, by a state actor, to a place of confinement, including, but not limited to county jails, juvenile detention centers, and mental institutions. See Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968). We can find no basis to exclude institutional commitment to a legitimate sexual offender treatment program from consideration for pretrial sentence credit. Thus, the essential query in determining whether the appellant is entitled to pretrial credit for time spent at Hermitage Hall focuses upon the voluntary/involuntary nature of his commitment.

The appellant argues that his commitment "was a result of the charge taken against him in Juvenile Court and was in lieu of state custody. . . had he not submitted himself into residential treatment, he most likely would have been committed into state custody with the Department of Children's Services." We reject this position; rather, we concur with the trial court's finding that the appellant's placement in the treatment program at Hermitage Hall was completely voluntary on his behalf.

As an alternative position, the appellant asserts that he is at least entitled to credit from June 27, 1997, until his transfer to the Grainger County Jail on August 14, 1997. In support of this argument, the appellant refers to the order of the juvenile court judge stating that the appellant "is to be held for Grainger County. He is not to be released to go anywhere until he has had a bond hearing." This order of the juvenile court expressly "confines" the appellant to Hermitage Hall pending a bond hearing; thus, the order effectively transforms the appellant's initial voluntary commitment to an "involuntary" detention. Accordingly, we conclude the appellant

qualifies for pretrial credit from June 27, 1997, until his release therefrom on August 14, 1997.

We modify the trial court's judgment to reflect that the appellant is entitled to an additional forty-nine days credit on his sentence for time served at Hermitage Hall prior to his prison incarceration.  As modified, the judgment of the trial court is affirmed.

_____
_____DAVID G. HAYES, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
JOHN EVERETT WILLIAMS, Judge