**STATE of Tennessee**

v.

**Alford Lee MORGAN.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 24, 2007 Session.

Jan. 7, 2008.

Russell T. Greene, Knoxville, Tennessee, for Appellant, Alford Lee Morgan.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General and William H. Crabtree and S. Jo. Helm, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA McGEE OGLE, J., joined.

Appellant, Alford Lee Morgan, threw a rock from an interstate overpass. This incident resulted in the death of a passenger in a vehicle traveling under the overpass. A jury convicted Appellant of first degree murder by a destructive device, reckless homicide, eight counts of reckless endangerment, two counts of aggravated assault, and one count of assault. Follow-

ing the trial, the trial court merged Appellant's conviction for reckless homicide into the conviction for first degree murder by destructive device. The trial court also merged the various aggravated assault and reckless endangerment convictions so that the remaining convictions were two convictions for aggravated assault and one conviction for reckless endangerment. The trial court sentenced Appellant to a life sentence for first degree murder, six years for each aggravated assault, and two years for reckless endangerment. Both the aggravated assault sentence and the reckless endangerment sentence were ordered to run consecutively to the life sentence and to each other. Appellant filed a timely notice of appeal. On appeal, Appellant argues that: (1) T.C.A. § 39–13–202(a)(3) is unconstitutionally vague; (2) the trial court erred in creating a definition for "destructive device" to include in the jury instructions; and (3) the trial court erred in failing to instruct the jury on reckless aggravated assault as a lesser included offense of aggravated assault. After a thorough review of the record, we reverse and dismiss Appellant's conviction for first degree murder by a destructive device. Therefore, we set aside his conviction for first degree murder, order the reinstatement of his conviction for reckless homicide, and affirm the remaining convictions.

### FACTUAL BACKGROUND

Around midnight on May 24, 2004, Mr. Jeremy Kelley called Appellant and asked Appellant if he would like to go with Mr. Kelley, Mr. Matt Carter and Mr. James Wright to load some engine blocks. Appellant went to Mr. Kelley's house. When everyone arrived, they drove to a shed where the engines were located. However, they did not load them because they determined that the engine blocks were too heavy and moving them would cause too much noise. They returned to Mr. Kelley's residence and smoked marijuana instead.

The young men decided to drive around. While they were driving around, Mr. Kelley opened the side door of the van in which they were riding and began hitting mailboxes with a metal asp. The asp broke on a concrete mailbox, and Mr. Kelley directed that they stop at a construction site. They collected rocks and bricks and began to throw them at mailboxes and parked vehicles. They drove to a convenience store and threw a brick through the window of the convenience store. They continued to drive through subdivisions and throw bricks and rocks at parked vehicles.

Mr. Kelley then suggested they go to a bridge. They drove to the Brushy Valley overpass over I–75. Mr. Carter ran across the bridge with a large board and threw it at an eighteen wheeler. It made a loud noise and excited everyone. They drove off the bridge, but turned around and stopped again on the bridge. Appellant grabbed a rock and threw it at a vehicle as it drove under the overpass. Appellant listened to the vehicle to determine when to throw it in order to hit the vehicle.

The sound of the rock hitting the vehicle scared the young men. They drove off the bridge and turned around to drive back over the bridge. They saw the tractor-trailer and the vehicle stopped on the side of the interstate but drove away.

In May of 2004, Gregory Dockins was a truck driver for Knoxville Iron Ameri–Steel. Around 1:40 a.m. on the morning of May 24, 2004, Mr. Dockins was taking a load of rebar to Kentucky. As he passed under the Brushy Valley overpass on I–75, Mr. Dockins saw something fall from the overpass and hit the top corner of his windshield on the driver's side, then knock off the driver's side rearview mirror. Mr.

Dockins drove up to the Racoon Valley exit and called the police. The police arrived within five minutes.

Mr. Christopher Grande, his wife, Melissa Grande, and his mother-in-law, Barbara Jean Weimer, were returning from a family member's graduation in Virginia to their home on Racoon Valley Road. Around 1:40 a.m. on the morning of May 24, 2004, they approached the Brushy Valley overpass at I–75. Suddenly, Mr. Grande heard what he thought was a gunshot. He looked over at his mother-in-law in the passenger seat and saw her head move from side to side. He saw blood and glass all over the passenger compartment of the vehicle. Mrs. Grande, who was sleeping in the backseat, woke up when Mr. Grande yelled out to his mother-in-law. Mrs. Grande reached forward and found her mother's pulse in her neck. Mrs. Grande stated that her mother's pulse was faint and urged Mr. Grande to pull over to the side of the road. He refused to pull over until they were further away from the bridge fearing more gunshots. He did not want his wife to see her mother's face because it looked like a rubber mask. When Mr. Grande looked over to find the dog that had been riding on Mrs. Weimer's lap, he saw a large rock in the passenger floorboard.

The Grandes pulled over to the side of the interstate and called 911. While Mr. Grande was on the telephone with the 911 operator, Mrs. Grande reported that she could no longer find her mother's pulse. The 911 operator told Mr. Grande to try CPR. By this time, Officer Robert Cole with the Knox County Sheriff's Department had arrived. Mr. Grande turned to Officer Cole and repeated what the operator had said. Due to the severity of Ms. Weimer's injuries, Officer Cole could not find a place to blow air into her mouth and thought that it looked like the victim's face had been completely destroyed. An ambulance arrived, and the paramedics attempted to revive the victim for thirty minutes. The victim was then transported to the hospital. An officer drove Mrs. Grande to the hospital. Another officer drove Mr. Grande to the hospital to be with his wife after returning the Grandes' dogs to their home. The victim was dead when she arrived at the hospital.

Officer Cole saw the rock on the passenger floorboard and notified dispatch that the incident had not been a shooting. He then drove up to Mr. Dockins's truck and interviewed him. There was also a third report that night of a similar incident at the same overpass. The authorities collected a wooden board from the southbound lane of the interstate, as well as the rock and rock fragments from the Grandes' vehicle.

On May 25, 2004, Mr. Wright spoke with the chief of the Norris Police Department. The chief called Lieutenant Michael Grissom of the Knox County Sheriff's Department to tell him that Mr. Wright had been riding in a van involved in the offense. From this interview, the police determined the identity of additional suspects. One of these suspects was Appellant.

On June 22, 2004, the Knox County Grand Jury indicted Appellant with two counts of first degree murder for the death of Mrs. Weimer, under two alternate bases; four counts of attempted first degree murder concerning Mr. and Mrs. Grande, under two alternate bases; three counts of aggravated assault concerning Mr. and Mrs. Grande and Mr. Dockins; and four counts of reckless endangerment concerning Mr. and Mrs. Grande and Mr. Dockins.

In January of 2006, the trial court held a jury trial. At the conclusion of the trial, the jury convicted Appellant of first degree murder by a destructive device and reckless homicide, as a lesser included offense of first degree murder, for Ms. Weimer's death; four counts of reckless endangerment, as a lesser included of-

fense of attempted first degree murder, concerning Mr. and Mrs. Grande; two counts of aggravated assault, concerning Mr. and Mrs. Grande; two counts of reckless endangerment, concerning Mr. and Mrs. Grande; two counts of reckless endangerment, concerning Mr. Dockins; and one count of assault, as a lesser included offense of aggravated assault, concerning Mr. Dockins. The trial court merged the convictions so that the remaining convictions were first degree murder by a destructive device, two convictions for aggravated assault and one conviction for reckless endangerment. At the conclusion of the sentencing hearing, the trial court sentenced Appellant to life for the first degree murder conviction, six years for each of the two aggravated assault convictions to run consecutively to the life sentence and to each other, and two years for the reckless endangerment conviction to run consecutively to the other three convictions. Appellant was sentenced as a Range I offender with a thirty percent release eligibility date for all of the convictions except first degree murder. The trial court denied Appellant's motion for new trial. Appellant filed a timely notice of appeal.

### ANALYSIS

Appellant argues three issues on appeal: (1) the first degree murder statute, T.C.A. § 39–13–202(a)(3), is unconstitutionally vague because the term "destructive device" is not defined; (2) the trial court erred in creating a definition for "destructive device" in the jury instructions; and (3) the trial court erred in failing to charge the lesser included offense of reckless aggravated assault.

#### Destructive Device

##### Constitutionality

Appellant argues that T.C.A. § 39–13–202(a)(3) is unconstitutional because it is vague. T.C.A. § 39–13–202(a)(3) defines first degree murder as follows, "A killing of another committed as the result of the unlawful throwing, placing or discharging of a destructive device or bomb." Appellant's challenge is that the term "destructive device" is vague in the statute.

■ The State argues that the statute is not unconstitutional but concedes that the evidence is not legally sufficient to support Appellant's conviction for first degree murder under T.C.A. § 39–13–202(a)(3). After a painstaking review of the record and applicable authorities, we must agree with the State. For this reason, we decline to address the constitutional issue. It is not necessary for a court to address a constitutional issue if the resolution of the issue is not "absolutely necessary to determining the issues in the case and adjudicating the rights of the parties." *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn.2002) (citing *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995)).

#### Rock as Destructive Device

■ As stated above, T.C.A. § 39–13–202(a)(3) defines first degree murder as follows, "A killing of another committed as the result of the unlawful throwing, placing or discharging of a destructive device or bomb." There is no current statutory definition of the term "destructive device." The State concedes that a rock does not constitute a "destructive device" as intended in the statute.

■ Generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full effect." *State v. Odom*, 928 S.W.2d 18, 29–30 (Tenn.1996) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (Tenn.1968)). This Court's primary duty in construing a stat-

ute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995); *see also State v. Davis,* 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State,* 952 S.W.2d 417, 419 (Tenn. 1997). "In seeking to determine the 'natural and ordinary meaning' of statutory language, the usual and accepted source for such information is a dictionary." *English Mountain Spring Water v. Chumley,* 196 S.W.3d 144, 148 (Tenn.Ct.App.2005). Furthermore, this Court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized, where possible. *Odom,* 928 S.W.2d at 30.

The statute reads, "destructive device or bomb." T.C.A. § 39–13–202(a)(3). The legislature's use of the conjunction "or" implies that the terms "destructive device" and bomb are interchangeable. According to *Webster's Third New International Dictionary* the definition of device is as follows, "something that is formed or formulated by design and usu[ally] with consideration of possible alternatives, experiment, and testing ... b: something fanciful, elaborate, or intricate in design ... c: a piece of equipment or a mechanism designed to serve a special purpose or perform a special function...." Merriam–Webster Inc., *Webster's Third New International Dictionary* 618 (1993).

Two prior cases have addressed appeals concerning first degree murder, "as the result of the unlawful throwing, placing or discharging of a destructive device or bomb." *See State v. Timmy Reagan,* No. M2002–01472–CCA–R3–CD, 2004 WL 1114588 (Tenn.Crim.App., at Nashville, May 19, 2004); *State v. Thoma Shawn Noles,* No. 01C01–9301–CC–00003, 1993 WL 483318 (Tenn.Crim.App., at Nashville, Nov. 18, 1993), *perm. app. denied,* (Tenn. Apr. 4, 1994). In *Timmy Reagan,* the appellant was convicted of the death of his wife that resulted from the appellant detonating dynamite in the victim's car while they were both in the car. *Timmy Reagan,* 2004 WL 1114588 at *1. There was no question as to whether the dynamite was considered a "destructive device."

The facts in *Thoma Shawn Noles* are strikingly similar to those in this case. In *Thoma Shawn Noles,* the appellant and his co-defendant dropped a boulder from an interstate overpass and killed the driver of an oncoming vehicle. *Thoma Shawn Noles,* 1993 WL 483318 at *1. The defendants were charged with first degree murder by a destructive device. *Id.* However, both defendants pled guilty to second degree murder. *Id.* Therefore, this Court never reached the question as to whether the boulder constituted a destructive device. Thus, it appears that there is no current statutory or judicial definition in Tennessee for "destructive device."

Although there is no definition for "destructive device" in the current code, the term was listed in a previous version of our code dealing with the unlawful possession of incendiaries, explosives and chemical weapons. T.C.A. § 39–4923 relied upon the description of "destructive device" in T.C.A. § 39–4922 as a definition for the term. T.C.A. § 39–4923 stated, "Any person possessing a destructive device as described in § 39–4922...." T.C.A. § 39–4923 (Supp.1977). T.C.A. § 39–4922 stated, "Any person having been convicted of a felony committed through the use of force or violence or convicted of violating § 52–1432 ... and who possesses *any explosive, incendiary or poison-gas bomb,*

*grenade, mine, missile, rocket, or any other similar destructive device ....*" T.C.A. § 39–4922 (Supp.1977) (emphasis added).

T.C.A. § 39–4922 was later changed to T.C.A. § 39–3–711, and T.C.A. § 39–4923 was included in T.C.A. § 39–6–1710. *See* T.C.A. 39–3–711 (1986); T.C.A. § 39–6–1710 (1986). T.C.A. § 39–6–1710 and T.C.A. § 39–3–711 consisted of the same language as their predecessors. In 1989, T.C.A. § 39–3–711 was repealed, 1989 Public Acts, ch. 591 § 1, as was T.C.A. § 39–56–1710. According to the Parallel Reference Table at the front of the 1989 Supplement both T.C.A. § 39–3–711 and T.C.A. § 39–6–1710 were replaced by T.C.A. § 39–17–1307. T.C.A. § 39–17–1307 concerns the unlawful possession of a weapon. The Compiler's Notes under T.C.A. §§ 39–3–701–711 [Repealed effective November 1, 1989] in the 1989 Supplement to the code directs the reader to statutes dealing with assaultive offenses (T.C.A. §§ 39–13–101–113), arson (T.C.A. §§ 39–14–301–307), and explosive offensives and weapons (T.C.A. §§ 39–17–1301–1361), as the statutes replacing T.C.A. §§ 39–3–701–711.[1]

When these statutes were repealed, the term "destructive device" was removed from the criminal offenses part of the code in all statutes except for T.C.A. § 39–13–202(a)(3), the first degree murder statute, and T.C.A. § 39–13–204(i)(7), as a statutory aggravating circumstance for the imposition of the death penalty. While this previous definition of "destructive device" is no longer in effect, it is instructive. In the not so distant past, the Legislature determined that the term "destructive device" referred to "any explosive, incendiary, or poison-gas bomb, grenade, mine, missile, rocket, or any other similar destructive device...." In addition, the statutes that replaced the repealed statute in which "destructive device" was defined are now included in the sections of our code that concern arson, explosives and weapons.

The term "destructive device" is also included in two other current sections, T.C.A. § 6–54–306 and T.C.A. § 49–6–3401. T.C.A. § 6–54–306 addresses police authority and penalties allowable for violations of certain municipal ordinances. This statute states that a municipality may recover administrative costs when it has adopted an ordinance that "prohibit[s] false threats or hoaxes involving biological weapons, destructive devices, or weapons of mass destruction...." T.C.A. § 4–6–3401 concerns reasons for suspension of elementary and secondary school students. T.C.A. § 49–6–3401 states that the following is a sufficient reason for suspension of a student, "[m]aking a threat, including a false report, to use a bomb, dynamite, any other deadly explosive or destructive device including chemical weapons on school property or at a school sponsored event." All these Tennessee legislative references, both past and present, to the term "destructive device" associate the term with explosive or chemical weapons. A rock does not fall within the area of criminal activity committed with the type of instrumentalities these code sections seek to prohibit.

---

1. In T.C.A. § 39–17–1301, the definition statute for statutes dealing with weapons and explosives, "Explosive Weapon" has a substantially similar definition to that for destructive device in the now repealed T.C.A. § 39–3–711. T.C.A. § 39–17–1301(3)(A) states, " 'Explosive weapon' means any explosive, incendiary or poisonous gas: (i) Bomb; (ii) Grenade; (iii) Rocket; (iv) Mine; or (v) Shell, missile or projectile that is designed, made or adapted for the purpose to inflicting serious bodily injury, death or substantial property damage...."

There are many other states that have statutes that include the term "destructive device" and have a definition set out in their codes. California, Delaware, Florida, Maryland, and South Dakota have similar statutory schemes where murder perpetrated by destructive device is first degree murder. Cal.Penal Code § 189; Del.Code Ann. tit. 11, § 636(a)(5); Fla. Stat. Ann. § 782.04(1)(a)(2)(k); Md.Code Ann.Crim. Law § 2.201(a)(4)(xii); S.D. Codified Laws § 22–16–4(2). In Arkansas, the use of a "destructive device" is an aggravating circumstance to be considered when determining whether or not to impose the death penalty. Ark.Code Ann. § 5–4–604(9). In North Dakota, not using a destructive device is an affirmative defense to murder. N.D. Cent.Code § 12.1–1–16–01(1)(c)(2). Other states such as, Georgia, Idaho, Indiana, Kentucky, Montana, New Mexico, South Carolina, Vermont and the District of Columbia use the term "destructive device" in their statutes with regard to firearms, explosives and antiterrorism and include a definition of the term in their statutes. D.C.Code § 7–2501.01(7); Ga. Code Ann. § 16–7–80(4); Idaho Code Ann. § 18–3318(2); Ind.Code Ann. § 35–47.5–2–4(a); Ky.Rev.Stat. Ann. § 237.030(1); Mont.Code Ann. § 45–8–322(1); N.J. Stat. Ann. § 2C:39–1(c); N.M. Stat. Ann. § 30–7–16(C)(1); N.M. Stat. Ann. § 30–20A–2(B); S.C.Code Ann. § 16–8–10(4); S.C.Code Ann. § 16–23–710(7); Vt. Stat. Ann. tit. 13, § 1603(1).

In the statutory compilations of these other states, the definitions of "destructive device" all include some language that defines a destructive device as some sort of explosive or chemical weapon. The various definitions often including the terms incendiary device, poison gas, bomb, grenade, molotov cocktail, rocket and missile. See Ark.Code Ann. § 5–73–101(3); Cal.Penal Code § 12301(a); Colo.Rev.Stat. Ann. § 18–9–101(1); Del.Code Ann. tit. 11, § 622(b)(2); D.C.Code § 7–2501.01(7); Fla. Stat. Ann. § 790.001(4); Ga.Code Ann. § 16–7–80(4); Idaho Code Ann. § 18–3318(2); Ind.Code Ann. § 35–47.5–2–4(a); Ky.Rev.Stat. Ann. § 237.030(1); Md. Code Ann.Crim. Law § 4–501(b); Mont. Code Ann. § 45–8–322(1); N.J. Stat. Ann. § 2C:39–1(c); N.D. Cent.Code § 12.1–01–04(7); N.M. Stat. Ann. § 30–7–16(C)(1); N.M. Stat. Ann. § 30–20A–2(B); S.C.Code Ann. § 16–8–10(4); S.C.Code Ann. § 16–23–710(7); S.D. Codified Laws § 22–1–2(13); Vt. Stat. Ann. tit. 13, § 1603(1).[2]

2. For example, the statutory definition in Delaware is, "any explosive, incendiary, or chemical material or over-pressure device which will rapidly expand in a manner to project material outward at such a rate to cause injury to persons or damage to property." Del.Code Ann., tit. 11 § 622. The statutory definition in North Dakota is "any explosive, incendiary or poison gas bomb, grenade, mine, rocket, missile, or similar device." N.D. Cent.Code § 12, 1–01–04(7). In Florida, the statutory definition is as follows:

"Destructive device" means any bomb, grenade, mine, rocket, missile, pipebomb, or similar device containing an explosive, incendiary, or poison gas and includes any frangible container filled with an explosive, incendiary, explosive gas, or expanding gas, which is designed or so constructed as to explode by such filler and is capable of causing bodily harm or property damage; any combination of parts either designed or intended for use in converting any device into a destructive device and from which a destructive device may be readily assembled; any device declared a destructive device by the Bureau of Alcohol, Tobacco, and Firearms; any type of weapon which will, is designed to, or may readily be converted to expel a projectile by the action of any explosive and which has a barrel with a bore of one-half inch or more in diameter; and ammunition for such destructive devices, but not including shotgun shells or any other ammunition designed for use in a firearm other than a destructive device. "Destructive device" does not include: (a) A device which is not designed, redesigned, used, or intended for use as a weapon; (b)

In addition, there is a definition in the United States Code that states:

(4) The term "destructive device" means—

(A) any explosive, incendiary, or poison gas—

(i) bomb,

(ii) grenade,

(iii) rocket having a propellant charge of more than four ounces,

(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

(v) mine, or

(vi) device similar to any of the devices described in the preceding clauses;

(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.

18 U.S.C.A. § 921(a)(4).

Had the Tennessee General Assembly intended to criminalize as first degree murder under T.C.A. § 39–13–202(a)(3) the throwing or placing of any object, such as a rock, in a destructive manner, that body could have done so. However, the legislature used the term "destructive device." The relevant statutes from other states, the United States Code, and our own Tennessee statutes all associate the term "destructive device" with some sort of explosive, incendiary, or chemical weapon. In addition, as noted earlier, the common definition of "device" in the dictionary means something formulated by design, a mechanism, or a piece of equipment. Although there is no question that a rock thrown from a highway overpass can be, and in this case was, horribly destructive, a rock cannot be considered a "device" as that term is commonly understood.

The actions of Appellant and his cohorts are nothing short of reprehensible. Those actions are directly responsible for the tragic death of Ms. Weimer and the terrible suffering of her family. Nevertheless, as repugnant as Appellant's conduct was, it does not, under current law, constitute a killing by "placing, throwing, or discharging of a destructive device" so as to be a first degree murder under T.C.A. § 39–13–

Any device, although originally designed as a weapon, which is redesigned so that it may be used solely as a signaling, line-throwing, safety, or similar device; (c) Any shotgun other than a short-barreled shot- gun; or (d) Any nonautomatic rifle (other than a short-barreled rifle) generally recognized or particularly suitable for use for the hunting of big game.

Fla. Stat. Ann. § 790.001(4).

202(a)(3). Appellant's conviction for first degree murder under that statute must therefore be reversed and dismissed.

■ As stated above, Appellant was also convicted of reckless homicide for the death of Ms. Weimer. The trial court merged the reckless homicide conviction into the first degree murder by a destructive device conviction. The trial court also imposed a four-year sentence for the reckless homicide conviction that was merged with the life sentence for the first degree murder conviction. Therefore, we order the reinstatement of the reckless homicide conviction. The four-year sentence imposed for reckless homicide will run consecutively to the other sentences imposed by the trial court.

### Jury Instructions

■ Appellant complains that the jury instruction concerning the definition of "destructive device" was erroneous. The trial court instructed the jury that:

"Destructive device" means anything manifestly designed, made or adapted for the purpose of demolishing, ruining or causing death or anything that in the manner of its use is capable of demolishing, ruining or causing death.

It is not clear from the record how the trial judge arrived at this definition. It appears, at least in part, to engraft the legislative definition of "deadly weapon" onto the term "destructive device." *See* T.C.A. § 13–11–106(a)(5). However, it is readily apparent that given our present holding as to the term "destructive device," the trial court's instruction that the term can mean "anything" adapted for destruction, or "anything" capable of causing destruction is erroneous. This definition should not be used in the future.

### Lesser Included Offenses

■ Appellant's final argument is that the trial court erred in not charging the offense of reckless aggravated assault as a lesser included offense for his aggravated assault convictions. The State argues that this issue is waived because Appellant failed to make citations to authority and to the record. More importantly, the State argues that Appellant failed to make a written request for an instruction on reckless aggravated assault as a lesser included offense at trial.

T.C.A. § 40–18–110 requires the defendant to request lesser included offense instructions in writing at trial in order to subsequently appeal a trial court's failure to instruct on such offenses. T.C.A. § 40–18–110(b), (c). T.C.A. § 40–18–110 states, in pertinent part:

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that T.C.A. § 40–18–110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as

error in a motion for new trial or on appeal." *Page*, 184 S.W.3d at 229.

We have throughly reviewed the record and discovered no written request for an instruction on reckless aggravated assault as a lesser included offense of aggravated assault. Nor has Appellant cited to the location of any written request. Therefore, this issue is waived for purposes of appeal.

 Moreover, in this case, the indictments for aggravated assault were based upon the victim "reasonably fear[ing] imminent bodily injury...." In *State v. Goodwin*, 143 S.W.3d 771 (Tenn.2004), our supreme court determined that reckless aggravated assault cannot be a lesser included offense of aggravated assault based upon fearing imminent bodily injury because reckless aggravated assault requires actual bodily injury. 143 S.W.3d at 776.

For these reasons, Appellant has waived this issue, and review of this issue under a plain error analysis is unnecessary.

This issue is without merit.

### CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment regarding Appellant's conviction for first degree murder based upon the use of a destructive device and affirm the remaining judgments. Additionally, the judgment of conviction for reckless homicide must be reinstated.