IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 3, 2010

## STATE OF TENNESSEE v. WILLIAM ANTHONY JONES

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-126     R. Lee Moore, Judge**

---

**No. W2010-00709-CCA-R3-CD   -   Filed November 5, 2010**

---

A Dyer County Circuit Court jury convicted the defendant, William Anthony Jones, of aggravated assault.  On appeal, he argues that the trial court erroneously prohibited him from "argu[ing] that the defendant lacked the mental state of intentionally or knowing[ly] with respect to causing serious bodily injury."  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Patrick McGill, Assistant District Public Defender, for the appellant, William Anthony Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the afternoon of March 22, 2009, the defendant struck Frances Joseph Complesi, the victim, while they were both imprisoned in Pod A of the Dyer County Jail. Pod A was constructed of concrete floors and cinder block walls and was furnished with steel tables and chairs.  The victim was standing at Pod A's window looking into the jail's hallways waiting for a jail employee to bring him his medication when the defendant walked down the stairs and punched him in the face.  The victim staggered about six or seven feet and then fell to the concrete floor.  The defendant then walked back upstairs and said, "I got him," to a group of prisoners on "lockdown" because they had been caught smoking

cigarettes. After the incident, investigators noted that the defendant's knuckles were discolored and swelling.

As a result of the attack, the victim bled heavily from his head. He was unresponsive to verbal or physical stimulation, and paramedics airlifted the victim to Memphis for lifesaving measures. The victim spent a month in intensive care and then required rehabilitative therapy. As a result of the attack, the victim suffered serious problems with his memory and limited use of his right hand. The victim testified that the right side of his body "hurts all the time" and that he took several medications. Because of the incident, he lives with his twin brother, Jerome, who cares for him. He maintained that he had no conflict with the defendant before he struck him.

The defendant testified at trial and maintained his innocence, explaining that he did not know who struck the victim.

At the sentencing hearing, the victim testified that he needed his brother to live with him because he was "not capable of . . . doing things for [him]self anymore." He explained that he had limited use of his right leg and right arm and that he could not maintain employment. He complained of chronic pain in his neck and arms for which he required pain medication. When asked what type of sentence the defendant should receive, he responded, "I'd like to get to where I won't have to see nobody like him walking the streets . . . ."

The defendant gave a statement to the court and asked for lenience "for these actions I'm being charged with." He maintained he was "sorry for this man or what happened to this man" but maintained his innocence.

The trial court enhanced the defendant's sentence on the basis that he had a criminal history in addition to that necessary to establish the appropriate range; a past failure of complying with community release; had committed a felony resulting in serious bodily injury; and had previously been convicted of a felony resulting in death. The trial court determined that an incarcerative sentence was necessary because of the defendant's extensive history of criminal behavior and to avoid depreciating the seriousness of the offense. The court also noted that measures less restrictive than confinement had been applied unsuccessfully to the defendant. The trial court found no potential for rehabilitiation, noting the defendant's long criminal record dating back to 1982. The court noted that the defendant had taken no responsibility for his actions and sentenced the defendant to the maximum 10-year incarcerative sentence for a Range II offender. The defendant filed a timely notice of appeal.

*I. Aggravated Assault*

The defendant first avers that the trial court erred by not allowing him to argue that the mens rea requirements of intentionally or knowingly applied to the "serious bodily injury" element of aggravated assault. Specifically, despite maintaining his innocence at trial and sentencing, the defendant now admits that he struck the victim once, but he maintains that the evidence failed to show that he intended to cause the serious injury resulting from his striking the victim. The State argues that the mens rea does not apply to the "serious bodily injury" element because it is a "result of the conduct element" and, perplexingly, that the jury was appropriately instructed.[1]

As an initial matter, the propriety of argument is a matter entrusted to the sound discretion of the trial court. *Elliott v. Cobb*, ___ _S.W.3d ___, No. W2009-00961-SC-S09-CV, slip op. at 4 (Tenn. Sept. 23, 2010) ("[W]e review the trial court's decision regarding jury argument using the 'abuse of discretion' standard.") "A trial court abuses its discretion by '(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Aggravated assault, as charged in this case, is defined in Tennessee Code Annotated section 39-13-102: "A person commits aggravated assault who: (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and: (A) Causes serious bodily injury to another[.]" T.C.A. § 39-13-102(a)(1)(A) (2006). "A person commits assault who: (1) Intentionally, knowingly or recklessly causes bodily injury to another . . . ." *Id.* § 39-13-101(a)(1).

It appears that this is the first time this court has been asked to determine specifically whether the mens rea requirement of the aggravated assault statute applies equally to the factual elements of the offense. To do this, we are guided by some well-settled principles of statutory construction.

The most basic principle of statutory construction is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within

---

[1]The State's entire argument is devoted to the propriety of the jury instruction on aggravated assault. The defendant, however, never challenges the propriety of the jury instructions and is instead focused entirely on the trial court's limitation of his argument.

the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). "Further, the language of a statute cannot be considered in a vacuum, but 'should be construed, if practicable, so that its component parts are consistent and reasonable.'" *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009) (quoting *Marsh v. Henderson*, 424 S.W.2d 193, 196 (Tenn. 1968)). This court must also "presume that . . . the General Assembly 'did not intend an absurdity.'" *Lee Med., Inc.*, 312 S.W.3d at 527 (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

We acknowledge the ruling of the United States Supreme Court in *Flores-Figueroa v. United States*,129 S. Ct. 1886 (2009), wherein the Court held that, as a general rule, the mental state introducing the elements of a criminal offense is applicable to each of the elements of that offense. Tennessee's aggravated assault statute, however, does not really fit within the rule of *Flores-Figueroa*. To arrive at this conclusion, we examine primarily the language and syntax of the statute. Breaking the statute down by clause, section 39-13-102(a)(1)(A) indicates that two things are required of the criminal actor before he is guilty of aggravated assault: (1) he must "[i]ntentionally or knowingly commit an assault as defined in § 39-13-101," and (2) he must "[c]ause[] serious bodily injury." Although the defendant's argument assumes that the phrases "commits an assault" and "[c]auses serious bodily injury" are compound predicates, both modified by the adverbs "intentionally or knowingly," closer examination of the statute reveals that the two phrases are actually part of restrictive adjective clauses introduced by the single relative pronoun "who," which relates to the antecedent noun "person." Because the adjective clauses have the same relative pronoun as the subject, the adverbs "intentionally or knowingly" would modify only the verb in the first clause, which is "commits." Read another way, the statute would say, "A person commits aggravated assault who intentionally or knowingly commits an assault as defined in section 39-13-101 and who causes serious bodily injury."

Construing the statute in context, using the natural meaning of the words and universal rules of construction as used in English, rather than a forced construction, it is clear that the mens rea element of intentionally or knowingly is limited in application, in the present case, to the commission of assault as defined in section 39-13-101. This interpretation is consistent with the pattern jury instruction for aggravated assault. 7 T.P.I.–

Crim. 6.02 (12th ed. 2008). Furthermore, we can comprehend no absurd result that would obtain from this interpretation because causation is still a requirement and a bodily injury as required by section 39-13-101(a)(1) must have been caused intentionally or knowingly as limited by section 39-13-102(a)(1).

Because "intentionally or knowingly" do not modify the phrase "causes serious bodily injury," the trial court did not err by refusing to allow the defendant to argue otherwise to the jury.

*II. Sentencing*

The defendant also challenges his sentence, arguing that, because he did not intend to cause such extensive bodily injury, he should not have been given a sentence at the top of the range. When considering a challenge to the length of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). Our case law has long held that the presumption of correctness "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Carter*, 254 S.W.3d at 344; *Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

Our review of the record shows that the trial court properly considered our sentencing scheme in determining the defendant's 10-year sentence. The trial court properly considered the defendant's extensive criminal history, *see* T.C.A. § 40-35-114(1), his failure to comply with conditions of sentences involving release into the community, *see id.* § 40-35-114(8), and that the defendant committed a felony resulting in serious bodily injury when he had been previously convicted of a felony that resulted in death (vehicular homicide), *see id.* § 40-35-114(11). Our review of the record shows that the trial court appropriately applied these enhancement factors and that the maximum sentence of 10 years was appropriate.

*Conclusion*

For the above-mentioned reasons, the judgment of the trial court is affirmed.


_____

JAMES CURWOOD WITT, JR., JUDGE