IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Submitted on Brief, July 25 2012

JOHN JAY HOOKER, on behalf of himself and others, v. GOVERNOR
BILL HASLAM, et al.

On appeal from the Circuit Court for Davidson County
No. 12C735    Hon. Hamilton Gayden, Jr., Judge

No. M2012-01299-COA-R3-CV - Filed July 27, 2012

Plaintiff filed this action in Circuit Court challenging the constitutionality of the Tennessee Retention Election Statutes, Tenn. Code Ann. §§ 17-4-1010 *et seq.* The Trial Judge held the statutes were constitutional, but concluded that intermediate appellate judges are subject to retention election only by the qualified voters of the grand division in which the judge resides. Plaintiff appealed. We affirm the Trial Court's decision that the statutes are constitutional, but reverse the Trial Court's holding that intermediate appellate judges are subject to retention only by the qualified voters of the grand division in which the judge resides.

Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, in
Part and Reversed in Part.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which DAVID G. HAYES, J., and DONALD P. HARRIS, J., joined.[1]

John Jay Hooker, *pro se.*

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Janet M. Kleinfelter, Deputy Attorney General, Nashville, Tennessee, for the appellees.

---

[1]Judges Hayes and Harris are retired Judges who were designated by Elizabeth A. Sykes, Director of the Administrative Office of the Courts to hear this case to its conclusion.

William A. Blue, Jr., *Amicus Curiae,* on behalf of the Tennessee Business Roundtable, LLC.

## OPINION

### Background

Plaintiff filed suit against defendants[2] seeking a declaration that Tennessee's statutory procedure for electing appellate court judges, the Tennessee Retention Election statutes, Tenn. Code Ann. §§ 17-4-101 *et seq*. (hereinafter "the Tennessee Plan"), is unconstitutional.

Plaintiff's position, as stated in the original complaint, is that the retention election statute, Tenn. Code Ann. § 17-4-101 *et seq*, "which authorizes the Governor to appoint an applicant to fill appellate court vacancies, violates the constitutional requirements that all 'vacancies' must be filled by the 'qualified voters' both for full terms under Article VI Section 3 and 4 [of the Tennessee Constitution], and for unexpired interim terms under Article VII Section 4 and 5 [of the Tennessee Constitution]." Essentially, plaintiff contends that "[t]here is only one way to be a judge of the appellate courts in Tennessee and that is to be elected by the 'qualified voters' in a popular election in the same manner that trial judges are elected by the 'qualified voters' under Article VI Section 4."

Plaintiff's prayer for relief asks: that the Trial Court hold that plaintiff has legal standing as a potential candidate, voter and litigant to seek declaratory judgement; that the Court hold the Tennessee Plan unconstitutional and enjoin further retention elections under the Tennessee Plan.

Plaintiff filed an amended complaint on April 10, 2012 that reiterated the allegations of the original complaint, but added one additional claim. The amended complaint alleges that the Tennessee Plan, as it relates to the elections of all Court of Appeal judges by the qualified voters of the State, violates Article VI, § 4 of the Tennessee Constitution that requires the election of Court of Appeals judges by the qualified voters of the districts wherein the judges reside and are assigned.

Defendants, in their responsive pleading, contended that this suit is part of plaintiff's seventh attempt in State and Federal courts challenging the constitutionality of the Tennessee

---

[2]Plaintiff sued individuals in their representative capacity from all three branches of State government. Most of these parties are not necessary parties to challenge the constitutionality of the statute.

Plan and that plaintiff has failed in each of those attempts. *See* (1) *State ex rel. Hooker v. Thompson,* No. 0S01-9605-CH00106 in the Chancery Court for Davidson County, Tennessee (dismissed for lack of standing); *Hooker v. Drowota, et al*. No. 98-034-111 in the Chancery Court for Davidson County, Tennessee (dismissed for lack of standing as Hooker was a candidate for governor and could not also run for Supreme Court)(affirmed by a Special Court of Appeals, application for permission to appeal to the Supreme Court denied)[3]; *John Jay Hooker v. Chief Justice Riley Anderson, et al.*, USDC No. 3-00-510(dismissed for failure to state a claim under federal law and held that with no viable federal claim, the court had no jurisdiction to consider the constitutional challenge to the Tennessee Plan)(affirmed); *Hooker v. Anderson*, 12 Fed. Appx. 323 (6th Cir. 2001); (4) *Hooker v. All Members of the Tennessee Supreme Court et al.*, USDC No. 3-02-0787(dismissed based on finding that allegations that the Tennessee Plan violated the Tennessee Constitution was barred by *res judicata*); *Hooker v. Bredesen, et al.,* USDC No. 3-06-0753 (voluntarily dismissed); and *Hooker v. Bredesen, et al.*, USDC No. 3:07-0373(consolidated with *Johnson, et al. v. Bredesen, et al.* USDC No. 3:07-0372(dismissed for lack of standing, failure to state a claim and *res judicata*)(dismissal affirmed by *Johnson v. Bredesen*, 356 Fed. Appx. 781 (6th Cir. 2009).

It was defendants' position that this action was barred by the doctrine of *res judicata.* The matter was heard on May 11th and May 18th, 2012 before the Trial Court. A Final Judgment was entered on June 13, 2012 wherein the Trial Court dismissed the case based on *stare decisis* with one exception as follows:

1. The Court finds that the Tennessee Retention Election Statute is constitutional for both the Supreme Court and the Criminal Court of Appeals; however, the Court finds that the Plaintiff does raise a first time judicable issue, not subject to the doctrine of res judicata, as to whether the Tennessee Plan is constitutionally regulated by Article VI, sec. 4 of the constitution which provides: "The judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the districts or circuit to which they are assigned. Every Judge of such courts shall be thirty years of age, and shall before his selection, have been a resident of the State of Tennessee for five years and of the circuit or district one year " (emphasis added). The Tennessee Plan, 17-4-101, *et seq.* requires that intermediate appellate judges be elected by the qualified voters of the state, additionally T.C.A. 16-4-102 provides: "At the regular elections every eight (8) years, there shall be elected twelve (12) judges of the Court of Appeals, of whom no more than (4) four shall reside in one (1) grand division of the state " The Court finds that this difference in the statewide election requirement and the constitutional limitation does not render the Tennessee Plan

---

[3]There are apparently unreported opinions and not available online.

unconstitutional for the election of the Court of Appeals Judges and the Criminal Court of Appeals Judges.

2. The Court further finds that T. C. A. 17-4-101, *et. seq.* and T.C.A. 16-4.-102, should be read in conjunction with Art. VI sec. 4 to provide that the judges of the Court of Criminal Appeals and of the Court of Appeals are required to run in a retention election in the districts to which they are qualified to run for and residing for (1) year.

3. The Court further finds that the Court of Appeals and Court of Criminal Appeals pursuant to T.C.A. 16-4-102 are assigned to the three grand divisions — east, middle and west — and that the vote that counts is in the districts that they are qualified to run in whether in a general open election or a yes-or-no vote pursuant to T.C.A. 17-4-101.

4. The Court further finds that the Tennessee Retention Election Act, T.C.A. 17-4-101, et seq., is valid and constitutional and that the Defendant Judge Jeff Bivins is qualified to sit for a yes-or-no vote without any opposition and that the plurality of yes-or-no votes requires only a tabulation from the counties that make up the Middle District of Tennessee.

The exception to the Trial Court's Order of Dismissal, was that intermediate appellate court judges are assigned to a district, i.e.*,* the Grand Division in which the judge resides, and the Trial Court concluded that the provisions of the Tennessee Plan requiring the retention election of intermediate appellate court judges by voters of the entire State of Tennessee was in conflict with Art. IV, § 4 of the Tennessee Constitution. The Court went on to hold that the provisions of the Tennessee Plan concerning the retention election of intermediate appellate court judges should be read consistently with the provisions of Art. VI, § 4 to provide that the intermediate appellate court judges be elected only by the residents of the district to which the judges are assigned, i.e., the Grand Division in which they reside.[4] Accordingly, the Trial Court did not enjoin the retention election of Court of Criminal Appeals Judge Jeff Bivins but, instead, directed that only those votes cast in the Middle Grand Division were to be counted in determining the results of his retention election. The Trial Court did state that it had not conducted a "standing hearing".

The Trial Court granted either party the right of immediate appeal, and plaintiff filed

_____

[4] Tenn. Code Ann. § 4-1-201 provides that there are three grand divisions of the State: the Eastern, Middle and Western.

a Notice of Appeal to this Court on June 18, 2012.

This Court entered an Order on July 10, 2012 that this appeal would be expedited, as the retention election at issue is scheduled for August 2, 2012. Appellant's brief was to be filed on or before July 17, 2012, appellees' brief was to be filed on or before July 24, 2012 and oral argument was set to be heard on July 30, 2012. The appellant did not file a brief in this Court, in compliance with the scheduling order or of the Rules of Appellate Procedure, Rule 27, *et seq.* Defendants' timely filed their brief.

## The Appeal

This issues presented for review are:

A.      Whether the Trial Court correctly ruled that plaintiff's challenge to the constitutionality of the Tennessee retention election statutes, Tenn. Code Ann. § 17-4-101 *et. seq.*, is barred by the doctrine of *stare decisis*?

B.      Whether the Trial Court erred in ruling that the intermediate appellate court judges of the Tennessee Court of Criminal Appeals are subject to election only by the qualified voters of that grand division in which the judge resides?

C.      Whether the Trial Court erred in ruling that plaintiff's challenge under Art. VI, § R, of the Tennessee Constitution to the constitutionality of the state-wide election of intermediate appellate court judges was not barred by the doctrine of *res judicata?*

This Court is asked to construe the statutes and determine their validity under the Tennessee Constitution. The Supreme Court, in *Waters v. Farr,* 291 S.W.3d 873 (Tenn.2009), set forth the standard of review to be employed in such cases:

When called upon to construe a statute, we must first ascertain and then give full effect to the General Assembly's intent and purpose. *Waldschmidt v. Reassure Am. Life Ins. Co.,* 271 S.W.3d 173, 176 (Tenn.2008). Our chief concern is to carry out the legislature's intent without either broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn.2002) (quoting *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995)). Every word in a statute "is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature." *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn.2005) (quoting *Marsh v. Henderson,* 221 Tenn. 42, 424

-5-

S.W.2d 193, 196 (1968)). When the statutory language is clear and unambiguous, we apply its plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn.2004). When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline,* 263 S.W.3d [827] at 836 [Tenn. 2008]. We presume that the General Assembly was aware of its prior enactments and knew the state of the law at the time it passed the legislation. *Owens,* 908 S.W.2d at 926.

*Waters* at 881–882.

The Court in *Waters* then discussed the standard of review for constitutional interpretation:

Issues of constitutional interpretation are questions of law, which we review *de novo* without any presumption of correctness given to the legal conclusions of the courts below. *Colonial Pipeline,* 263 S.W.3d at 836. It is well-settled in Tennessee that "courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties." *State v. Taylor,* 70 S.W.3d 717, 720 (Tenn.2002) (citing *Owens,* 908 S.W.2d at 926). Our charge is to uphold the constitutionality of a statute wherever possible. *State v. Pickett,* 211 S.W.3d 696, 700 (Tenn. 2007). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *Id.* (quoting *Gallaher v. Elam,* 104 S.W.3d 455, 459 (Tenn.2003)); *see also Vogel v. Wells Fargo Guard Servs.,* 937 S.W.2d 856, 858 (Tenn.1996) ("A statute comes to a court 'clothed in a presumption of constitutionality [since] the Legislature does not intentionally pass an unconstitutional act.' " (quoting *Cruz v. Chevrolet Grey Iron, Div. of Gen. Motors Corp.,* 398 Mich. 117, 247 N.W.2d 764, 766 (1976)) (alteration in original)).

*Waters* at 882.

The Tennessee Retention Election statutes (the Tennessee Plan) Tenn. Code Ann. § 17-4-101 *et seq.,* sets forth the statutory scheme for the election of appellate court judges in Tennessee, which may be summarized as follows: Tenn. Code Ann. § 17-4-102 (a) establishes as a part of the judicial branch of the state a judicial nominating commission of seventeen members. If a vacancy occurs during the term of office of a judge of the Court of Appeals, Court of Criminal Appeals or Supreme Court, the judicial nominating commission entertains nominations for candidates to fill that vacancy. The nominating commission selects three persons whom the commission deems best qualified and available to fill the vacancy

and sends the names of those individuals to the Governor as nominees for the judicial vacancy. Tenn. Code Ann. § 17-4-109. The Governor will fill the vacancy by appointing one of the three persons nominated by the judicial nominating commission, or the Governor may require the commission to submit one other panel of three additional nominees. Tenn. Code Ann. § 17-4-112(a)(1). An incumbent appellate judge who seeks election or re-election for a full eight-year term must qualify by filing with the state election commission a written declaration of candidacy. Tenn. Code Ann. § 17-4-115 (a). If the declaration of candidacy is timely filed, only the name of that candidate, without party designation, shall be submitted to the electorate in this state in the regular August election.

In a retention election, if a majority of those voting on the question vote to retain the candidate, then the candidate is duly elected to the office. Tenn. Code Ann. § 17-4-115 (d)(1). However, if a majority of those voting on the question vote to replace the candidate the Governor fills the vacancy in the office on recommendation of the judicial nominating commission, as herein discussed. Tenn. Code Ann. § 17-4-115 (d)(1).

The stated purpose of the Tennessee Plan is set forth in Tenn. Code Ann. § 17-4-101:

(1) Assist the governor in finding and appointing the best qualified persons available for service on the appellate courts of this state, and to assist the electorate of this state in electing the best qualified persons to the courts;
(2) Better insulate the judges of the courts from political influence and pressure;
(3) Improve the administration of justice;
(4) Enhance the prestige of and respect for the courts by minimizing the necessity of political activities by appellate judges; and
(5) Make the courts less political.

Plaintiff's amended complaint asserts a challenge to the constitutionality of the Tennessee Plan, Tenn. Code Ann. § 17-4-101 *et seq*. based on the constitutional requirements that all judicial "vacancies" must be filled by the 'qualified voters' under Article VI Section 3 and 4 of the Tennessee Constitution. The Trial Court was correct in finding that plaintiff's general challenge to the constitutionality of the Tennessee Plan was barred by the doctrine of *stare decisis* as the Tennessee Supreme Court and federal district courts have upheld the constitutionality of the statute in prior decisions. Plaintiff's foregoing argument postulates that appellate judges are not elected by the qualified voters of the State of Tennessee is contrary to fact. Clearly, the reported results of elections demonstrate that the qualified voters of the State of Tennessee either elected the judges or rejected their continuance in office.

The doctrine of *stare decisis* is that "when a principle of law has been established by a court of competent jurisdiction that then in that State where such rule is established it becomes settled and binding upon the courts of that State and should be followed in similar cases." *Staten v. State*, 191 Tenn. 157, 159, 232 S.W.2d 18, 19 (1950). The doctrine has been characterized by our Supreme Court as "one of commanding importance, giving, as it does, firmness and stability to principles of law." *In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005)(citing *J. T. Fargason Co. v. Ball*, 128 Tenn. 137, 159 S. W. 221, 222 (1913). The *McFarland* court noted that stability in the law allows individuals to plan their affairs and to "safely judge of their legal rights." *Id.* The Court also stated that its power to overrule former decisions "is very sparingly exercised and only when the reason is compelling." *McFarland* at 306 (citing *Edingbourgh v. Sears, Roebuck & Co.,* 206 Tenn. 660, 337 S.W.2d 13, 14 (1960)).

The Tennessee Supreme Court in *State by Shriver ex rel. Higgins v. Dunn*, 496 S.W.2d 480, 487 - 490 (Tenn. 1973) addressed the issue of the constitutionality of retention elections of appellate court judges and held that the elections are " not in conflict with the provisions of the Constitution of our State." *Id*. at 490. Plaintiff in this case challenged the constitutionality of the Tennessee Plan in *State ex rel. Hooker v. Thompson*, 249 S.W.3d 331 (Tenn. 1996), and in that case the Supreme Court stated that [t]he issue of whether yes/no retention elections violate the Constitution of Tennessee has previously been decided by the Tennessee Supreme Court in the case of *State ex rel. Higgins v. Dunn,* 496 S.W.2d 480 (Tenn.1973), and no compelling reason has been given to persuade this Court that it should disturb that ruling." *Hooker v. Thompson* at 337, and concluded its analysis by holding that the Tennessee Plan, which provides for a yes/no retention vote based on a majority vote is constitutional. *Id*. at 338.

Based on these holdings, and based on the fact that plaintiff did not present the Trial Court with any compelling reasons to disturb those rulings we hold that the Trial Court correctly held that it was bound by the doctrine of *stare decisis* with respect to plaintiff's general challenge to the constitutionality of the Tennessee Plan and correctly held that the Tennessee Plan was constitutional. We affirm the Trial Court's holding on this issue.

The Trial Court found the provisions of the Tennessee Plan that require intermediate appellate judges to be subject to a retention election by all the voters in the State of Tennessee differed from the provision of Article VI, § 4 of the Tennessee Constitution. However, the Trial Court, stated that the difference was not a "conflict' that caused the Tennessee Plan to be unconstitutional. The Trial Court construed the statutory scheme for the election of intermediate appellate court judges to be that "judicial candidates running for reelection under [the] Tennessee Plan for the Criminal Court of Appeals and the Civil Court of Appeals must be approved by a plurality of 'yes' votes in the Grand Division (district) to

which they are 'assigned'" and have resided in for more than one (1) year prior to their candidacy, with no more than four judges from the same district.

The Tennessee Constitution provides for the establishment of a state Supreme Court, circuit and chancery courts and other inferior court established by the Tennessee General Assembly. Tenn. Const. Art. VI, §1; *City of Knoxville ex rel. Roach v. Dossett*, 672 S.W.2d 193, 195 (Tenn. 1984). The Tennessee Court of Appeals was created by the General Assembly in 1925 to lessen the burden of the Supreme Court. *Hibbett v. Pruitt*, 162 Tenn. 285, 36 S.W.2d 897, 899 (1931). The Court of Criminal Appeals was created by the General Assembly in 1967. Pub. Acts 1967, Ch. 226, Tenn. Code Ann. § 16-5-101 *et seq*. The Tennessee Constitution does not mention the intermediate appellate courts, because they were not created at the time the Constitution was adopted in 1870. However, they are considered "inferior" courts which the General Assembly was authorized to create pursuant to Tenn. Cost. Art. VI, §1.

The Tennessee Constitution, Art. VI, § 4, defines the requirements for the election of the inferior courts such as the Court of Appeals and the Court of Criminal Appeals including the provision that the judges *"shall be elected by the qualified voters of the district or circuit to which they are assigned."* Tenn. Const. Art. VI, § 4 (emphasis supplied). Article VI, § 4 confers exclusive authority on the General Assembly to define what constitutes a "district" or "circuit" to which the judges of the inferior courts are assigned. When the General Assembly established the Court of Appeals and the Court of Criminal Appeals, it intended that these two intermediate courts serve the entire state. The legislature did not create three Courts of Appeal and three Court of Criminal Appeals. It created one Court of Appeals and one Court of Criminal Appeals.

Tenn. Code Ann. § 16-4-101 provides for the creation of the Court of Appeals as follows: "There shall be an appellate court composed of twelve judges, styled the court of appeals." The statute provides for one court. Tenn. Code Ann. § 16-4-113 makes it clear that the legislature intended the Court of Appeals to be one court as it provides:

> In order to expedite the trial and decision of cases, the court of appeals, when the court deems it advisable so to do, is authorized and empowered to sit in sections of three (3) judges each, at Knoxville, Nashville and Jackson, to hear and determine cases just as though all twelve (12) members were present and participating; and the presiding judge of the court of appeals shall in such event have the right, from time to time, to assign and reassign the judges and sections.

Tenn. Code Ann. § 16-4-105 reinforces our conclusion that the General Assembly intend to create one Court of Appeals and not three: " The entire court shall have one (1)

presiding judge, chosen by the members of the court, and, when sitting in sections, each section shall at all times have a presiding judge to be chosen by its members."

Similarly, Tenn. Code Ann. § 16-5-101 provides for the creation of the Court of Criminal Appeals: "There is created and established an appellate court in this state to be designated and styled the court of criminal appeals of Tennessee. The legislature intended the creation of one court not three. The Court of Criminal Appeals is also directed to sit in Knoxville, Nashville and Jackson and other places as designated by the presiding judge and is authorized to sit in panels of three, five or seven judges at any regular or special term, in the discretion of the presiding judge. Tenn. Code Ann. § 16-5-107.

In contrast, the trial court system is completely different. Tenn. Code Ann. § 16-2-506 provides that "[t]he state is divided into thirty-one judicial districts . . ." and defines those districts on a geographical basis, county by county. Unlike the statutes concerning the intermediate courts of appeal, the statute expressly states that the trial court judges shall serve the districts established by the statute.

These statutes concerning the Court of Appeals and the Court of Criminal Appleals demonstrate that the General Assembly, exercising its exclusive constitutional authority, defined the entire State of Tennessee as the "district" to which the intermediate court judges are assigned. Accordingly, because the judges are assigned to serve and do serve the entire State, their election by a statewide retention election pursuant to the Tennessee Plan is consistent with the requirements of Article VI, § 4 of the Tennessee Constitution. The Trial Court's findings to the contrary are reversed and plaintiff's claim regarding the requirement for "district" retention elections of the judges of the intermediate court of appeals is dismissed. We reverse the Trial Court's holding on this issue, and all of the qualified voters who voted in the retention election will be counted state wide.

The defendants and the amicus contend that the Trial Court should have found that the doctrine of *res judicata* barred plaintiff's claim that the Tennessee Plan's provision of statewide retention elections of the judges of the intermediate courts of appeal was unconstitutional under Article VI, §4 of the Tennessee Constitution. Since we have concluded that the Tennessee Plan's provision for statewide elections is not in conflict with Article VI, § 4 on the merits, we decline to consider defendants' *res judicata* argument.

In conclusion, we affirm the Trial Court's ruling that the Tennessee Plan is constitutional, but the remainder of the Trial Court's Judgment is reversed and the cause is remanded.

The cost of the appeal is assessed to the appellant, John Jay Hooker.


_____
HERSCHEL PICKENS FRANKS, P.J.