# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 04, 2014 Session

## STATE OF TENNESSEE v. RICHARD ALAN HATCHEL

### Appeal from the Circuit Court for Tipton County
### No. 7694     Joe H. Walker, III, Judge

### No. W2014-00486-CCA-R3-CD  - Filed January 27, 2015

Defendant, Richard Alan Hatchel, was indicted by the Tipton County Grand Jury for first degree premeditated murder and felony reckless endangerment under T.C.A. § 39-13-103(b)(3).  Defendant was convicted as charged by a jury.  Following a sentencing hearing, the trial court sentenced Defendant to life imprisonment for his first degree murder conviction and three years for his reckless endangerment conviction, with the sentences to be served concurrently.  In this appeal as of right, Defendant asserts and the State concedes that the evidence is insufficient to support Defendant's conviction for reckless endangerment because the proof at trial showed that Defendant was inside the house, and an element of the offense for which Defendant was charged is that he discharged a firearm from outside of the house.  Defendant also asserts that the evidence was insufficient to sustain his conviction for first degree premeditated murder.  After a careful review of the record before us, we conclude that the evidence was sufficient to support Defendant's conviction for first degree premeditated murder, but the evidence was insufficient to support Defendant's conviction for felony reckless endangerment as charged.  Accordingly, the judgment of conviction for first degree murder is affirmed.  The judgment of conviction for felony reckless endangerment is reversed and the charge of felony reckless endangerment is dismissed with prejudice.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgment of the Criminal Court Affirmed in Part, Reversed in Part

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gary F. Antrican, District Public Defender; and David S. Stockton, Assistant Public Defender, Somerville, Tennessee, for the appellant, Richard Alan Hatchel.

Herbert H. Slatery, III, Attorney General and Reporter; J. Ross Dyer, Senior Counsel; D. Michael Dunavant, District Attorney General; James Walter Freeland, Jr. and Billy Burk, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Facts*

The victim, Shannon Hatchel, was married to Defendant at the time of her death. On Monday preceding the day of the incident, Defendant asked his mother, Ann Prather, if he could stay with her because he and Ms. Hatchel had been arguing. On Thursday, Defendant told Ms. Prather that he was going to talk to Ms. Hatchel and "try to work things out." Ms. Prather testified that on Friday, January 25, 2013, she received a text message from Defendant stating, "Wil pls vo cbeck om shanmon juzt hurt her real bad sorry." Ms. Prather attempted several times to contact Ms. Hatchel. When she was unable to reach Ms. Hatchel, she called the Tipton County Sheriff's Department to ask them to send someone to check on her.

Deputy Randy Lee of the Tipton County Sheriff's Office responded to a call to perform a welfare check at Ms. Hatchel's residence. When he arrived, he noticed that the front door was partially ajar. He knocked on the door, and the door swung open. Deputy Lee saw the butt of a rifle laying on the floor. He looked inside and discovered Ms. Hatchel sitting on the couch with an apparent gunshot wound to her chest.

Detective Chris Williams of the Tipton County Sheriff's Office responded to the scene. Detective Williams viewed a video recording from a neighbor's security camera. The video showed Defendant's vehicle arrive at the residence at approximately 8:04 a.m. on Friday, January 25, 2013. Defendant went inside the residence, stayed for approximately 50 minutes and then left. Defendant's vehicle returned to the address the same day at approximately 11:43 a.m., and Defendant went inside the residence. Defendant stayed for approximately five minutes, then walked to his vehicle, stayed in his vehicle for a few minutes, and then went back inside the residence. The video shows that two minutes later, Defendant left the residence and drove away.

On January 26, 2013, in a recorded statement given to Detective Williams, Defendant stated that he went to Ms. Hatchel's residence on Friday, and they argued about money. He stated that he shot Ms. Hatchel, but that he did not know that the gun was loaded. He only intended to scare Ms. Hatchel when he pointed the gun at her and pulled the trigger. Detective Williams interviewed Defendant again on January 28, 2013. During that interview, Defendant admitted that he loaded the gun when he went to his truck to retrieve it. He stated,

"I don't know why I did it, and I don't know what made me do it."

On January 26, 2013, Tipton County 911 dispatcher Debbie Vertrees received a hang up call. She called the phone number back, and Defendant answered and identified himself. Defendant stated that he wanted to know if there was a warrant for his arrest. Ms. Vertrees asked Defendant what kind of warrant it would be, and Defendant answered that it would be for a "shooting that occurred at 216 Adams" the previous day. Defendant told Ms. Vertrees that he wanted to turn himself in. Ms. Vertrees dispatched officers to Defendant's location.

Dr. Erica Currie, a forensic pathologist, performed an autopsy on the victim. She testified that Ms. Hatchel was shot in the chest and suffered rib fractures, bleeding around her right lung, and her liver was "near complete pulverization." The bullet exited the victim's back, and no projectile was recovered. Dr. Currie found no gunpowder stippling around the wound. The manner of the victim's death was homicide.

*Analysis*

Defendant contends that the evidence is insufficient to support his conviction for reckless endangerment. The State concedes that the evidence does not support Defendant's conviction for reckless endangerment as charged in the indictment.

Count 2 of the indictment alleges that Defendant "did unlawfully, feloniously and recklessly engage in conduct that places or may place another person in imminent danger of death or serious bodily injury by discharging a firearm into a habitation occupied at that time by [the victim] . . . in violation of T.C.A. [§] 39-13-103. . . ." T.C.A. § 39-13-103(a) provides that "a person commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." The offense of reckless endangerment is a Class A misdemeanor. T.C.A. § 39-13-103(b)(1). Subsection (b)(3) of the statute provides, however, that "reckless endangerment by discharging a firearm into a habitation, as defined under § 39-14-401, is a Class C felony." T.C.A. § 39-13-103(b)(3). The judgment reflects that Defendant was convicted of Class C felony reckless endangerment.

In matters of statutory interpretation, we apply a de novo standard of review. *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004). Generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full effect." *State v. Odom*, 928 S.W.2d 18, 29-30 (Tenn. 1996) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (Tenn. 1968)). This court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923,

926 (Tenn. 1995); *see also State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State*, 952 S.W.2d 417, 419 (Tenn. 1997).

Defense counsel raised the issue after the close of the State's proof in this case:

[Defense counsel]: I'm not sure that he discharged a weapon into a habitation. He discharged a weapon under the facts maybe inside the habitation. There seems to be a distinction. I think the statute was designed to confront the problem of drive-by shootings where people are outside and people actually shoot from outside through the walls from the roads. I don't know of any case law that changes that. There might be. But I think the firing obviously was inside a dwelling rather than into a dwelling. Those are different words.

THE COURT: I believe that will be a fact really for the jury to determine. The indictment does say "into a habitation occupied at the time by [the victim] . . . ."

Based on the clear and unambiguous language of the statute, in order to sustain a conviction for the offense charged, the State would have to show that Defendant was outside the victim's home and fired a shot "into" the home. The proof at trial established that Defendant was inside the home when he fired a shot at the victim. Therefore, Defendant's conviction for reckless endangerment must be reversed.

Defendant next contends that the evidence at trial was insufficient to support his conviction for first degree premeditated murder. When considering the sufficiency of the evidence, an appellate court must afford the State the strongest legitimate view of the evidence and draw all reasonable inferences in the State's favor. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). We defer to the trier of fact on questions concerning witness credibility, weight and value of evidence, and other factual issues raised by the evidence. *See Bolin v. State*, 219 Tenn. 4, 405 S.W.2d 768, 771 (1966). The key issue is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *see also* Tenn. R. App. P. 13(e). This standard

applies whether the conviction was based upon direct or circumstantial evidence. *State v. Farmer*, 380 S.W.3d 96, 100 (Tenn. 2012) (citing *State v. Sutton*, 166 S.W.3d 686, 689 (Tenn. 2005)). When there is a verdict of guilty, the defendant on appeal bears the burden of showing that the evidence was legally insufficient to support the guilty verdict. *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn.2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

First degree premeditated murder is defined as a "premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). Premeditation refers to "an act done after the exercise of reflection and judgment." T.C.A. § 39-13-202(d). The element of premeditation is a factual question to be decided by a jury from all the circumstances surrounding the killing. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). Although a jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). Our supreme court has held that factors demonstrating the existence of premeditation include, but are not limited to, the following: declarations of the intent to kill, procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, infliction of multiple wounds, the making of preparations before the killing for the purpose of concealing the crime, destruction or secretion of evidence, and calmness immediately after the killing. *State v. Jackson*, 173 S.W.3d 401, 409 (Tenn. 2005); *State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000). Additional factors cited by this court from which a jury may infer premeditation include lack of provocation by the victim and the defendant's failure to render aid to the victim. *See State v. Lewis*, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000). Further, "[e]stablishment of a motive for the killing is a factor from which the jury may infer premeditation." *State v. Leach*, 148 S.W.3d 42, 54 (Tenn. 2004).

The evidence in this case showed that Defendant left the marital residence on the Monday before the shooting occurred because of an argument between Defendant and the victim. On the day of the shooting, Defendant went to the residence, and he and the victim argued about money. Defendant left and returned again later. They again discussed money, and during the conversation, Defendant went outside and retrieved his rifle, loaded it, and returned to the residence. Defendant then pointed the rifle at the unarmed victim, who was seated on the couch, and he shot her in the chest. Defendant stated that he "ended up picturing [his] ex-wife's face, and [he] shot [the victim]." Defendant then left the residence. He did not render aid to the victim. In his statement to Detective Williams, Defendant stated, "I didn't check on [the victim]. . . . I just left and I don't know why. I don't remember sending the text to my mom. I guess I was scared. I didn't call 911. I know I should have done more. I should have done better." Defendant stated that he drove around until his truck ran out of gas.

Defendant's assertion that "the proof fails to demonstrate that this unfortunate death was other than an accident. . ." is without merit. The proof supports the jury's finding of premeditation. Defendant also contends that his conviction for first degree murder "must certainly suffer from the same flawed misunderstandings" that resulted in his conviction for felony reckless endangerment. We disagree. Tennessee courts have routinely held that each count of an indictment is a separate indictment and must be individually supported by the evidence. *Wiggins v. State*, 498 S.W.2d 92 (Tenn. 1973). Defendant is not entitled to relief on this issue.

For the reasons stated herein, the judgment of conviction for first degree murder is affirmed. The judgment of conviction for felony reckless endangerment is reversed and the charge of felony reckless endangerment is dismissed with prejudice.

_____
THOMAS T. WOODALL, PRESIDING JUDGE