IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2025

## KATHERINE WEHR JOHNSON v. DUSTIN FAEDER

**Appeal from the Circuit Court for Davidson County**
**No. 22X889   Phillip R. Robinson, Judge**
_____

### No. M2025-00198-COA-R3-CV
_____

This appeal stems from an extension and modification of an order of protection. Upon motion by Appellee, the trial court extended the initial order of protection between the parties for one year and modified the terms of the order. Appellant challenges the extension on procedural, statutory, and constitutional grounds. After careful review, we affirm the trial court's extension and modification of the order of protection.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

VALERIE L. SMITH, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Dustin Faeder, *pro se*, Brentwood, Tennessee, for the appellant, Dustin Faeder.

Katherine Wehr Johnson, *pro se*, Brentwood, Tennessee, for the appellee, Katherine Wehr Johnson.

# MEMORANDUM OPINION[1]

## I.    BACKGROUND & PROCEDURAL HISTORY

Katherine Wehr Johnson ("Appellee") and Dustin Faeder ("Appellant") are neighbors residing on the same street in a residential subdivision. The parties' homes are located two houses down from one another. The first incident giving rise to the underlying proceeding occurred on July 14, 2021. On that date, Brian Johnson, Appellee's husband (who is not a party to this litigation), saw Appellant in Appellee's backyard without permission and accompanied by his two young children. Appellant was shirtless at the time, and Mr. Johnson asked that Appellant put on a shirt. Appellant then left the Johnsons' yard with his children. There was no direct interaction between Appellant and Appellee during this encounter.

On July 29, 2021, Appellant delivered a letter to Appellee's mailbox. The delivery consisted of a men's shirt accompanied by a typed letter addressed to "Shirtman," seemingly in reference to Mr. Johnson. In the letter, Appellant proposed a solution for any future incidents: if Appellant's children wandered onto the Johnsons' property while Appellant was outside without a shirt, the Johnsons could bring him the enclosed shirt, which he would then wear and later return to their mailbox for repeated use. Appellant signed the letter "Your Eternally Neighborly Neighbor."

Relations between the parties further deteriorated following this incident. The record indicates that on numerous occasions over the next fifteen months, Appellant was seen walking or standing in front of Appellee's home wearing only brightly colored underwear. This behavior occurred repeatedly, including occasions when Appellee was hosting a children's birthday party and an Easter gathering at her home.

On January 30, 2022, Appellee was outside of her home when Appellant approached her to discuss the idea of their children playing together. The exchange between the parties turned contentious. Appellee was alarmed by Appellant's demeanor and recounted that Appellant aggressively approached her irritated about a lack of communication between the parties. Appellant conceded in his appellate brief that this interaction "did not go well."

---

[1] Rule 10 of the Rules of the Court of Appeals provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On May 7, 2022, Appellee installed a security camera on her property. On this day, while Appellant was walking his dog, the dog urinated on Appellee's mailbox post at the edge of her yard. Appellee confronted Appellant about allowing his dog to relieve itself on her property. This led to a heated argument between the neighbors regarding where Appellant was permitted to walk his dog and whether his presence on the grass near the road constituted trespassing. Later that same day, Appellant delivered another letter to Appellee's mailbox. In this letter, Appellant defended his "right to walk" his dog on what he described as public land adjacent to the roadway, and he asserted that keeping his dog on the grass near the street did not amount to trespassing.

On May 8, 2022, Appellant was once again walking his dog near the boundary of Appellee's yard. The video from Appellee's security camera shows Appellant pausing on the street to speak with other neighbors while his dog remained on the grassy area. Then, the dog entered Appellee's property, and Mr. Johnson confronted Appellant. Appellee alleged that when the dog entered the property, Mr. Johnson used "two open hands to usher the dog off the property." An altercation ensued in which Appellant shoved Mr. Johnson in front of his two children and Mr. Johnson called the police. The dispute eventually de-escalated with the assistance of neighbors.

On May 10, 2022, Appellee found another letter in her mailbox dated May 9, 2022, in which Appellant included an annotated subdivision plat map (the "Plat"). In the letter, Appellant explained that, according to the Plat and property records, the public right-of-way extended approximately ten feet into what Appellee considered her front lawn and that "the property lines begin [ten feet] back from the street" but "the city owns that ten feet" due to a fifty-foot public right of way. Appellant requested that Appellee refrain from interfering with him and his family when they are walking in the neighborhood within what he viewed as the public right of way.

Following his May 9, 2022 letter, Appellant continued to engage in similar behavior. The record indicates that Appellant continued to make use of the strip of grass and the edge of Appellee's driveway to walk his dog and allow the dog to relieve itself. He was observed lingering on or near Appellee's property on many occasions. Appellant also continued to walk outside wearing only underwear within sight of Appellee's residence. At one point, Appellant removed a sign from Appellee's lawn that had been placed there to deter pet owners from allowing dogs to relieve themselves on the lawn. In October of 2022, Appellee's security camera photographed Appellant walking around Appellee's property in the early morning hours. When Appellee awoke the next morning, she found "X" marks written in chalk in the street in front of her driveway.

On October 26, 2022, Appellee filed an *ex parte* order of protection as well as a petition and order for an order of protection pursuant to Tennessee Code Annotated section 36-3-605 in the Davidson County General Sessions Court alleging that Appellant had engaged in acts of stalking. The petition also sought an order of protection for Appellee's

two minor children. Appellee requested that the court order no contact between the parties and that Appellant stay away from Appellee's home, workplace, and from generally approaching Appellee. After a finding of good cause, the general sessions court granted the *ex parte* order and set a hearing for November 9, 2022. The court held a hearing and issued a one-year order of protection on November 14, 2022 (the "initial order of protection"). Appellant then appealed to the Davidson County Circuit Court (the "trial court") on November 23, 2022. The general sessions court entered a final order of protection on November 23, 2022, which the court extended and kept in effect until the appealed order of protection was resolved in the trial court proceeding.

The trial court heard this matter over the course of 2023 with the final evidentiary hearing taking place on December 18, 2023. Appellant presented two arguments to the trial court against issuance of the initial order of protection. Appellant first argued that a ten-foot public right-of-way existed along the front of Appellee's property and is open to the public as a forum for public protest. Appellant next argued that he has a First Amendment right to walk on a dedicated unpaved sidewalk or public right-of-way across the front of Appellee's property.

As it relates to Appellant's first argument, the trial court heard testimony from David Kline, Manager for GIS and Mapping Services for the Metropolitan Government of Nashville and Davidson County ("Metro"). Mr. Klein testified that the developers of Cloverland Acres recorded the Plat for the development on September 29, 1978. The developers then made offers to Metro to dedicate the streets reflected on the Plat. According to Mr. Kline, Metro will generally accept the dedication from the developer if the roadway is built to certain city specifications. Here, the Plat contained a fifty-foot roadway; however, the paved road was only thirty feet wide from curb to curb because Metro only accepted the thirty-foot paved roadway. Mr. Klein described the Plat as depicting an older paved roadway not built to current Metro standards as it has no shoulder or sidewalks. The trial court noted that "Mr. Klein suggest[ed] that where there is no shoulder or sidewalk, the Metropolitan Code provides that a pedestrian shall walk on the paved roadway and is entitled to a three-foot right-of-way measured from the curb to the center of the street." The trial court further stated:

> This Court does not question the fact that an additional 20 feet of land, approximately ten (10) feet on either side of the 30-foot roadway has been dedicated to public use. Whether this means it automatically becomes an unpaved public sidewalk open to the public or an easement for the future expansion of the roadway by the city or municipality remains unclear, nor does the Court believe it is determinative of the issues before it. Even if the front approximately ten (10) feet of the Johnsons' property serves as an unpaved sidewalk and thus a public forum, the determinative question is whether the Respondent, Mr. Faeder, has used this property, public or private, for the purpose of stalking and harassing the Johnsons.

- 4 -

After considering Appellant's argument that his conduct occurred on public property, the trial court then determined whether Appellant's behavior constituted stalking pursuant to Tennessee Code Annotated section 39-17-315(a)(4). Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Tenn. Code Ann. § 39-17-315(a)(4) (West, Westlaw May 21, 2018 to June 20, 2023). The trial court found that Appellant's behavior met the elements of stalking by a preponderance of the evidence. The trial court further found that Appellant's "behavior or conduct directed towards Mr. [Johnson and Appellee] is harassing as defined by the statute, which defines harassment as repeated and continuing unconsented contact[.]" The trial court noted that Appellant's behavior "would cause a reasonable person to suffer emotional distress, and that in this particular instance, it actually did cause Mr. [Johnson and Appellee] to suffer emotional distress and to feel frightened, intimidated, threatened or harassed based on their respective testimonies."

Finding that Appellant's behavior constituted stalking within the meaning of Tennessee Code Annotated section 39-17-315(a)(4), the trial court turned to Appellant's argument that he engaged in conduct protected by the First Amendment by "protesting [Mr. Johnson and Appellee's] desire that he wear a shirt when coming to their property uninvited." The trial court found that Appellant's "protest" did not address an issue of public concern, which foreclosed First Amendment protection, as Appellant was not attempting to promote "uninhibited, robust, and wide-open debate on a public issue." Accordingly, the trial court issued the one-year order of protection on February 9, 2024.

The order prevented Appellant:

a. From speaking to or attempting to engage Mr. Johnson or Ms. Johnson in conversation or any attempt to elicit a response from either of the Petitioners in any manner whatsoever.

b. From entering onto or walking upon their property located at 5644 Clovermeade Drive, Brentwood, Davidson County, Tennessee, including the approximate ten (10) foot dedication adjoining the Johnson property to Clovermeade Drive, whether or not the aforesaid strip of property is deemed a public right-of-way or their private property, during the term of this Order of Protection.

c. From allowing any pet of yours or your family to enter upon the Johnson property described above for any purpose whatsoever, irrespective of whether the animal is leashed or unleashed and from allowing such

animal to urinate or defecate upon the above-described property.

d. From attempting to communicate with Mr. or Ms. Johnson by telephoning or placing any correspondence whatsoever and to whomever addressed in the Johnsons' mailbox at their residence or leaving any note, messages or notices on the above-described property.

e. From cutting, trimming, or damaging any vegetation or landscaping on the above-described property.

f. From blocking the ingress or egress of the Johnson property driveway located at 5644 Clovermeade Drive, Brentwood, Davidson County, Tennessee.

g. From wearing the colorful, revealing underwear described in the Findings of Fact in this cause while walking on the roadway in front of the Johnsons' residence.

h. From parking a motor vehicle, belonging to the Respondent, Dustin Faeder, or in which he owns an interest, along the roadway in front of any part of the Johnsons' property described above.

Appellant did not appeal the initial order of protection entered on February 9, 2024.

Before the initial order of protection was set to expire, Appellee filed a motion to extend the order of protection on January 23, 2025. Appellee moved for a five-year extension, alleging that Appellant violated the order by engaging in further unconsented conduct on April 11, 2024. While not directly stated in Appellee's motion, the violation alleged that Appellant parked his wife's car directly in front of Appellee's residence.[2] The trial court issued an order stating that the order of protection shall remain in effect pending a hearing and further orders of the court. Appellant filed a response asserting two defenses to the motion on January 23, 2025. First, Appellant asserted that the condition allegedly violated was void *ab initio* pursuant to the First and Fourteenth Amendments because he was engaged in a peaceful protest. Second, Appellant alleged that he complied with the provisions of the order from the time of entry in October of 2022. Appellant filed a supplemental response on January 29, 2025 where Appellant expanded upon his constitutional argument by asserting that the trial court violated his due process rights in two ways: "(1) by, without notice, incorporating facts from a separate proceeding in the

---

[2] The trial court noted to the parties during the extension hearing that Appellant's motion did not contain a detailed account of the alleged violation. Thus, the court suggested that the matter be continued so that Appellant could be fully apprised of the allegations. Appellant informed the court that the parties previously attended a preliminary hearing in general sessions court and requested that the extension hearing not be delayed. The trial court granted this request and continued with the hearing.

[c]ourt's [o]rder, and (2) by violating [Appellant's] presumption of innocence until proven guilty guaranteed by the 5th, 6th, and 14th Amendments to the United States Constitution."

A hearing on the motion to extend was held on February 7, 2025. The court heard testimony from Appellant's wife, Appellee, and Appellant. Testimony referenced the April 11, 2024, incident in which Appellant parked his wife's car in front of Appellee's residence. Section "h" of the initial order of protection prevented Appellant "[f]rom parking a motor vehicle, belonging to the [Appellant], Dustin Faeder, or in which he owns an interest, along the roadway in front of any part of the Johnsons' property described above." The trial court found that Appellant did not violate the letter of the original order because Appellant did not have an ownership interest in his wife's car. However, the trial court extended the order of protection for a period of one year finding that Appellant's actions demonstrated a continued pattern of intimidation and harassment in violation of "the spirit of the order."

The trial court noted that Appellee "emphatically testified that she remained fearful of [Appellant] and his harassing, and stalking behavior." In addressing Appellant's behavior, the trial court stated that Appellant's "purpose continues to be to bully and intimidate his neighbors." The trial court granted a one-year extension of the order of protection on February 7, 2025, and issued its written findings and conclusions of law on February 27, 2025. The trial court noted that Appellee remains fearful that Appellant will continue to harass her upon expiration of the order of protection and found good cause to justify the extension. The trial court modified the extended order of protection to restrain Appellant "from parking any vehicle or conveyance of any type in front of" Appellee's home. Appellant timely filed a notice of appeal with this Court on February 10, 2025.

The appellate record does not include a transcript of the trial court proceedings. However, on February 25, 2025, Appellee filed an objection to Appellant's statement of the evidence and filed a proposed Tennessee Rule of Appellate Procedure 24(c) statement of the evidence. The trial court denied Appellant's and approved Appellee's statement of evidence on February 27, 2025.

## II.    ISSUES PRESENTED

In his appellate brief, Appellant raised several "issues" for this Court's review; however, the precise bases of Appellant's issues are intertwined with factual and legal arguments. The dispositive issues of this appeal as we perceive them are as follows:

1.  Whether the trial court's delay in issuing its final order following the hearing voided the jurisdiction to extend the order of protection for a period of one year pursuant to Tennessee Code Annotated 36-6-605(b).

- 7 -

2. Whether the trial court acted within its discretion to extend the order of protection pursuant to Tennessee Code Annotated 36-6-605(b).

3. Whether the order of protection violated Appellant's constitutional rights.

### III. STANDARD OF REVIEW

Our review of an order of protection originating in a general sessions court and appealed to a circuit court is *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence indicates otherwise. *See* Tenn. R. App. P. 13(d); *see e.g.*, *Walker v. Pawlik*, No. M2013-00861-COA-R3-CV, 2013 WL 5781565, at *3 (Tenn. Ct. App. Oct. 23, 2013). "Proving an allegation by a preponderance of the evidence requires a litigant to convince the trier-of-fact that the allegation is more likely true than not true." *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 825 n.19 (Tenn. Ct. App. 2005) (citing *Austin v. City of Memphis*, 684 S.W.2d 624, 634-35 (Tenn. Ct. App. 1984)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (internal citations omitted); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

Additionally, our Supreme Court has summarized the principles involved in statutory construction as follows:

In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.,* 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool,* 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga,* 172 Tenn. 505, 114

S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner,* 295 S.W.3d 610, 613-14 (Tenn. 2009).

## IV.    DISCUSSION

We note that the parties are proceeding *pro se* in this appeal. Even though Appellant is proceeding *pro se*, he is also a licensed attorney in the state of Tennessee. *Pro se* litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015). Courts should be mindful that *pro se* litigants often lack any legal training and many are unfamiliar with the justice system. *State v. Sprunger,* 458 S.W.3d 482, 491 (Tenn. 2015). Accordingly, courts should afford some degree of leeway in considering the briefing from a *pro se* litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), and should consider the substance of the *pro se* litigant's filing. *Poursaied v. Tenn. Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021). Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

1.  Delay in Entry of Order

Appellant first asserts on appeal that the trial court lacked subject matter jurisdiction to extend the order of protection because the trial court took the matter under advisement from December 18, 2023, until issuance on February 9, 2024. He asserts that Tennessee Code Annotated section 36-3-605(b) requires the trial court to rule on the order of protection at the conclusion of the hearing. Appellee argues that the statute does not include the effective date of the order to be the last day of the hearing. She further asserts that judges routinely take complex cases under advisement, which Tennessee Code Annotated section 36-3-605 does not prohibit. Our analysis is as follows.

The granting and subsequent extension of an order of protection is governed by Tennessee Code Annotated section 36-3-605. Section (b) specifies:

(b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing must be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking, sexual exploitation of a minor, sexual assault, or a human trafficking offense by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order

is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period[.]

Tenn. Code Ann. § 36-6-605(b).

Tennessee Code Annotated section 20-9-506 provides that "[w]hen any judge of any district tries a case without the intervention of a jury . . . the judge shall be required to render the judge's decision and have judgment entered in the case within sixty (60) days from the completion of the trial." Further, Tennessee Supreme Court Rule 11, section III(d) states:

> No case may be held under advisement in excess of sixty days and no motion, or other decision of the trial judge that delays the date of trial or final disposition in the trial court, shall be held under advisement for more than thirty days, absent the most compelling of reasons. (See Tenn. Code Ann. § 20-9-506.) A MOTION TO RENDER DECISION setting out the facts said to constitute a failure to comply with this rule may be filed with the presiding judge and the circuit justice, or either of them.

Tenn. Sup. Ct. R. 11, § III(d) (emphasis in original).

Contrary to Appellant's argument, the plain language of Tennessee Code Annotated section 36-3-605(b) does not include a prohibition against taking the matter under advisement for a period of time that is permissible pursuant to Tennessee Code Annotated section 20-9-506. Additionally, Tennessee Code Annotated section 36-3-605(b) explicitly states that "[a]ny ex parte order of protection must be in effect until the time of the hearing, and, if the hearing is held within fifteen (15) days of service of such order, then the ex parte order must continue in effect until the entry of any subsequent order of protection issued[.]" Tenn. Code Ann. § 36-3-605(b). The general sessions court ruled that the initial order of protection shall remain in effect until the trial court resolved the matter, which the trial court did on February 9, 2024. The trial court acted within the confines of Tennessee Code Annotated section 36-3-605.

Here, the trial court held the final day of the hearing on December 18, 2023, and the court issued its written findings on February 9, 2024. Only 53 days elapsed from the date of the hearing until entry of the final order. As such, the trial court acted within the time prescribed to rule on the motion to extend. Further, the record reveals that neither of the parties filed any type of motion or other pleading seeking to expedite a judicial determination from the trial court. Tenn. Sup. Ct. R. 11, § III(d). As such, we will not grant relief to Appellant on this issue when Appellant also bears some responsibility for the delay. *Justice v. Sovran Bank*, 918 S.W.2d 428, 430 (Tenn. Ct. App. 1995) ("An inordinate

delay in resolving issues in dispute results in prejudice to the judicial process."); *see also* Tenn. R. App. P. 36 ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also Hill v. Hill*, 682 S.W.3d 184, 209 (Tenn. Ct. App. 2023) (finding the issue of delay "without merit" where both parties failed to motion the court to render a decision).

Accordingly, the record before this Court indicates that the motion to extend was properly before the trial court and the trial court did not err in ruling on the motion within 60 days after the final hearing. We conclude that the trial court had jurisdiction.

 2. Basis to Extend the Order of Protection

Appellant argues next on appeal that even if an order of protection was in effect on January 23, 2025, there was no basis for the trial court to extend the order of protection as no technical violation occurred. He further asserts that Tennessee Code Annotated section 36-3-605(b) does not allow a court to take an order of protection under advisement. Appellee asserts that Tennessee Code Annotated section 36-3-605(b) does not require proof of a violation of the underlying order to grant an extension. Rather, Appellee asserts that the statute is "flexible" to allow a trial court to extend an order of protection and prevent harm based upon a showing of proper cause. Appellee did not provide support for this argument. The trial court declined Appellee's request for a five-year extension of the order of protection pursuant to Tennessee Code Annotated section 36-3-605(d). However, the trial court granted a one-year extension based upon Appellee's fear of future harassment or stalking behavior from Appellant if the order were to expire. Our analysis is as follows.

A trial court may extend an order of protection for one year "if the petitioner has proved the allegation of domestic abuse, stalking, sexual exploitation of a minor, sexual assault, or a human trafficking offense . . . by a preponderance of the evidence[.]" Tenn. Code Ann. § 36-3-605(b) (West, Westlaw July 1, 2022 to March 24, 2025). A court may extend an order of protection for five years within the time the order of protection is in effect if the respondent is served and "is found to be in violation of the order." Tenn. Code Ann. § 36-3-605(d). However, subsection (b) does not contain the requirement that a violation must occur for an order of protection to be extended for a period of one-year. The statute states "**on proper showing of cause**, such order may be continued for a further definite period of one (1) year[.]" Tenn. Code Ann. § 36-3-605(b) (emphasis added). Further, "any court of competent jurisdiction may modify the order of protection" if the underlying order of protection remains in effect. Tenn. Code Ann. § 36-3-605(d). This Court explained:

> A party seeking entry of an ex parte order of protection has a significant burden of proof; he or she must demonstrate "[a]n immediate and present danger of abuse to the petitioner." Tenn. Code Ann. § 36-3-605(a). [The

respondent] contends [the petitioner] had to carry that burden of proof, to prove an immediate and present danger of abuse to obtain an extension or modification of the order. We, however, find his contention is without merit.

A party seeking a modification or extension of an existing order of protection, which is the case here, has a less onerous burden of proof than that suggested by [the respondent]. The party seeking a modification or extension only needs to prove "the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence." *See* Tenn. Code Ann. § 36-3-605(b); *see also Collins v. Pharris*, No. M1999-00588-COA-R3-CV, 2001 WL 219652, at *4 (Tenn. Ct. App. Mar[.] 7, 2001).

To obtain the modification or extension of the Order of Protection at issue, [the petitioner] had the burden of proving by a preponderance of the evidence, the allegation of domestic abuse, the definition of which includes placing an adult in fear of physical harm. *Collins*, 2001 WL 219652, at *5 (citing Tenn. Code Ann. § 36-3-601(1) (Supp. 2000))[.]

*Cardwell v. Hutchinson*, No. E2009-02680-COA-R3-CV, 2010 WL 4810671 at *4 (Tenn. Ct. App. Nov. 24, 2010) (quoting *Wadhwani v. White*, No. M2005-02655-COA-R3-CV, 2007 WL 27329, at *3 (Tenn. Ct. App. Jan. 3, 2007)).

This Court has previously found an extension of an order of protection permissible where a respondent did not commit a technical violation of the order of protection, but the petitioner was found to be fearful of the respondent. The petitioner in *Cardwell v. Hutchinson* was sexually assaulted by the respondent who was her church youth leader. *Id.* at *4. The *Cardwell* respondent did not violate the underlying order of protection, but this Court upheld the trial court's extension of the order when testimony demonstrated that the petitioner was vulnerable and feared encountering the respondent at community events. *Id.* For example, although the petitioner testified that she only saw the respondent on two occasions, the parties "did make eye contact and [p]etitioner was panicking and freaking out" after the sightings. *Id.* at *2 (internal quotations omitted). The respondent argued that petitioner was required to prove she was in immediate danger of harm before the order of protection could be extended; however, this Court rejected that contention. *Id.* at *4. Rather, to extend an order of protection, the burden is "less onerous" as the party seeking extension only needs to prove "the allegation of . . . stalking[.]" *See* Tenn. Code Ann. § 36-3-605(b); *see also Collins v. Pharris*, No. M1999-00588-COA-R3-CV, 2001 WL 219652, at * 4 (Tenn. Ct. App. Mar. 7, 2001).

Further, in *Wadhwani v. White* the petitioner sought an extension of an order of protection after the respondent repeatedly appeared "uninvited and unannounced" at the petitioner's home while the initial order of protection was pending. *Wadhwani*, 2007 WL 27329 at *3. These caused the petitioner to feel threatened and frightened especially after

the respondent admitted to driving by the petitioner's home "all of the time." *Id.* at *4. While the order of protection permitted communication between the parties at the petitioner's residence, this communication was only authorized when it related to the parties' children or sale of the marital residence. *Id.* at *1. This Court upheld the trial court's extension and modification of the initial order of protection noting that the modification "benefitted both parties by providing that [respondent] may not come about [petitioner's] premise whatsoever at any time for any reason." *Id.* at *4 (internal quotations omitted). This court noted that the "modification is more than adequate to clear up the previous uncertainty that concerned" respondent." *Id.*

To obtain the modification or extension of the order of protection at issue, Appellee had the burden of proving by a preponderance of the evidence the allegation of stalking against Appellant. Tennessee Code Annotated section 39-17-315 (West, Westlaw May 21, 2018 to June 30, 2023) states in, relevant part, as follows:

(3) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose;

(4) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested;

(5) "Unconsented contact" means any contact with another person that is initiated or continued without that person's consent, or in disregard of that person's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(A) Following or appearing within the sight of that person;

(B) Approaching or confronting that person in a public place or on private property;

(C) Appearing at that person's workplace or residence;

(D) Entering onto or remaining on property owned, leased, or occupied by that person;

(E) Contacting that person by telephone;

(F) Sending to that person mail or any electronic communications, including, but not limited to, electronic mail, text messages, or any other type of electronic message sent using the internet, websites, or a social media platform; or

(G) Placing an object on, or delivering an object to, property owned, leased, or occupied by that person.

The appellate record does not contain a transcript of the proceedings, however, the trial court approved Appellee's statement of evidence pursuant to Tennessee Rule of Appellate Procedure 24(c). This statement highlights Appellee's testimony during the extension hearing that she believed Appellant did not intend to curtail his behavior once the original order of protection was set to expire. This included a February of 2024 "Memorandum of Understanding and Notice of Intent to Protest" that Appellant delivered to Appellee and the trial court stating "that he intended to continue wearing his underwear in all other parts of the neighborhood not explicitly outlined in the Order." In addressing the April 11, 2024 incident in which Appellant parked his wife's vehicle in front of Appellee's home, the trial court emphasized that Appellee "was even more fearful that [Appellant] would begin to repeatedly violate the [c]ourt's order." The trial court noted in its final order that "[t]he insidious part of a stalker or harasser is the great efforts such perpetrators go to in an effort to prove to their victim that the stalker is above the law and cannot be prevented from his stalking and harassing behavior."

In addition to extending the order of protection, the trial court modified the order to restrain Appellant "from parking any vehicle or conveyance of any type in front of" Appellee's home. As any court with competent jurisdiction may modify the underlying order of protection, we conclude that modification was within the sound discretion of the trial court pursuant to Tennessee Code Annotated section 36-3-605(d). The trial court modified the order of protection to prevent Appellant from parking any vehicle in front of Appellee's residence regardless of whether Appellant has an ownership interest. Similar to the petitioner in *Wadhwani v. White*, who tested the bounds of the initial order of protection, the modification here settled the previous uncertainty concerning where Appellant may park a vehicle under his dominion.

We conclude that the evidence does not preponderate against the trial court's finding that Appellee proved by a preponderance of the evidence the need for an extension or modification of the order of protection.

3. Constitutional Claims

We will now turn to Appellant's constitutional questions. As a preliminary note,

Appellant did not appeal the order of protection entered by the trial court on February 9, 2024. Appellant asserted during the extension proceeding and on appeal that he did not need to appeal the underlying order of protection to question the constitutionality of the underlying order and to raise constitutional issues for the first time. Appellant does not provide authority to support this proposition.

While Appellant's brief contains labels such as "[a]ll the relevant caselaw and code sections," it fails to direct this Court to authority in support of his position that the trial court violated numerous Constitutional rights. Appellant also fails to develop his constitutional arguments. "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). "[P]arties must thoroughly brief the issues they expect the appellate courts to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009). Because the Appellant did not here, we consider his arguments waived.

## V.      CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to Appellant, Dustin Faeder, for which execution may issue if necessary.


s/Valerie L. Smith
VALERIE L. SMITH, JUDGE

- 15 -